Michael REVAK, Petitioner,

v.

NATIONAL MINES CORPORATION and Old Republic Companies, Respondent,

and

Director, Office of Workers' Compensation Programs, Party-in-Interest.

No. 86–3211.

United States Court of Appeals, Third Circuit.

Argued Oct. 16, 1986.

Decided Dec. 29, 1986.

Opinion on Rehearing March 6, 1987. Rehearing and Rehearing En Banc Denied April 3, 1987.

---

John P. Gismondi (argued), Gilardi, Cooper and Gismondi, Pittsburgh, Pa., for petitioner.

John Eric Jones, Jr. (argued), Christopher L. Wildfire, Tillman and Thompson, Pittsburgh, Pa., for National Mines Corp.

Kenneth S. Sollars (argued), George R. Salem, Donald S. Shire, J. Michael O'Neill, Thomas L. Holzman, U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., for Director, Office of Workers' Compensation Programs.

Before GIBBONS, BECKER, Circuit Judges, and FULLAM, District Judge.*

## OPINION OF THE COURT

BECKER, Circuit Judge.

This petition for review of a decision and order of the Benefits Review Board of the U.S. Department of Labor denying the claim of petitioner Michael Revak for benefits under the Black Lung Benefits Act as amended, 30 U.S.C. §§ 901 *et seq.*, requires us to answer a question that has divided the Circuits: may an Administrative Law Judge balance conflicting evidence in deciding whether to invoke the interim presumption of total disability due to pneumoconio-

---

* The Honorable John P. Fullam, Chief United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

sis disease pursuant to 20 C.F.R. 727.-203(a), or must the ALJ find the presumption triggered so long as the claimant adduces a single piece of qualifying evidence establishing disability. For the reasons that follow, we conclude that the balancing procedure applied by the ALJ in this case was improper and that Revak was entitled to a presumption of disability on the basis either of his qualifying ventilatory function study or of his qualifying medical report. Because Revak's claim was dismissed by the ALJ on the basis of a balancing procedure, and the BRB affirmed, we will reverse the order of the BRB and remand the case for reconsideration.

## I.

Revak, who worked for 35 years in underground mining, is currently 67 years of age. In 1960 he began to have coughing spells, particularly when digging near the mine-face. His symptoms became progressively worse. During the mid–1970's he often had to leave the mine after only a few hours because of coughing attacks. In 1979, Revak was placed on disability by his employer because of shortness of breath, and he has not returned to mining since that time. From 1975 to 1981, Revak was hospitalized periodically at the West Virginia University Medical Center and at Allegheny General Hospital in Pittsburgh. During each of these hospitalizations he was diagnosed variously as having chronic bronchitis and/or bronchial asthma.

In May 1978, Revak filed this claim seeking benefits for total disability resulting from pneumoconiosis under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. §§ 801 et seq. National Mines Corporation, his most immediate former employer, disputed his claim, and the parties proceeded to gather medical information for a hearing before an ALJ. That hearing took place on April 18, 1983.

At the hearing, Revak presented a report of one of his treating physicians, Dr. Peter Kaplan. In that report, Dr. Kaplan expressed his view that Revak suffered not from pneumoconiosis but from bronchial asthma. Dr. Kaplan stated, however, that the condition was related to Revak's exposure in his coal mine employment. He also stated that Revak's "working in coal mines may exacerbate his illness and produce an acute attack." In addition, Revak presented the report and deposition of Dr. Naresh I. Bhatt. Dr. Bhatt found Revak to be totally and permanently disabled as a result of pneumoconiosis due to coal mining employment.

Countering this evidence, National Mines presented the report and deposition of Dr. Ludwig Anderson. Dr. Anderson opined that Revak's respiratory condition was not pneumoconiosis but bronchial asthma. Dr. Anderson also stated that Revak was not disabled by a respiratory impairment. He agreed, however, that when Revak was exposed to coal dust his condition was exacerbated or aggravated, and he also agreed that it might not be medically advisable for Revak to return to an environment in which he would be exposed to coal dust.

Additionally, National Mines presented a number of medical studies performed on Revak. All the x-ray evidence presented was negative for pneumoconiosis, and none of the arterial blood gas studies yielded values low enough to demonstrate pulmonary impairment in accordance with the standards provided by the Labor Department's applicable regulation. However, one and perhaps two ventilatory function studies yielded results that did meet the requirements for respiratory or pulmonary disease as provided in the regulations.[1]

---

1. The ventilatory function studies of record yielded the following results:

| EXHIBIT | DATE | FEV$_1$ | MVV | HGT | TRACING |
|---|---|---|---|---|---|
| A.201 | 3/26/75 (after bronchodilator) | 2.74 2.70 | 99 99 | 67" | No |
| A.223 | 2/28/79 (after bronchodilator) | 2.43 2.59 | 101 121 | 68" | Yes |
| A.230 | 11/30/79 | 2.32 | 122 | 67" | Yes |
| A.242–43 | 6/3/80 | 2.37 | 94.5 | 68" | Yes |
| A.204–11 | 10/28/82 (after bronchodilator) | 2.43 2.69 | 80 96 | 67" | Yes |

The June 3, 1980 study and arguably the November 30, 1979 study produced qualifying values, but the rest of the study values were non-qualifying under 20 CFR 727.203(a)(2). The ALJ found the November 30, 1979 study to produce qualifying values (Appendix at 247). As the Director's brief states, however, this finding may have been erroneous because, under the regulation for a person of height 67" or less, the FEV must be equal to or less than 2.3 and the MVV equal to or less than 92. In view of our disposition of the matter, the status of the November 30, 1979 study is irrelevant.

## II.

An ALJ must decide a claim for total disability pursuant to 20 C.F.R. § 727.203, which permits a claimant an "interim" presumption of total disability arising out of coal mine employment, thereby shifting the burden of proving ineligibility for payments to the employer. According to § 727.203(a), the ALJ must accord this presumption of disability to any miner "who engaged in coal mine employment for at least 10 years"[2] and who meets one of four medical requirements:

(1) A chest roentgenogram (x-ray), biopsy, or autopsy establishes the existence of pneumoconiosis ...;

(2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in § 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than [certain values specified in the regulation's table];

(3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than [certain values specified in the regulation's tables];

(4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment;

. . . .

In this case, notwithstanding the qualifying ventilatory study or studies and the medical reports introduced by Revak, the ALJ refused to invoke the interim presumption. He found that Revak had failed to satisfy subsections (a)(1) and (a)(3) because all of the x-ray evidence was negative and the arterial blood gas studies did not meet the values specified in the regula-

tions. He refused to invoke the presumption under subsection (a)(2) even though at least one set of ventilatory function studies yielded qualifying values, because the majority of studies, including the two most recent, did not. Finally, the ALJ refused to invoke the presumption under (a)(4) because he found that Dr. Bhatt's report was not well reasoned in that it "relie[d] primarily upon a negative x-ray, non-qualifying blood gas study and [did] not consider claimant's history of bronchial asthma." In contrast, the ALJ found Dr. Anderson's report well reasoned and Dr. Anderson more qualified than Dr. Bhatt in addition. Crediting Dr. Anderson's opinion, the ALJ refused to invoke the presumption and determined that Revak neither has pneumoconiosis nor is totally disabled by a respiratory impairment. The BRB affirmed.

In his petition for review, Revak claims that the BRB erred in affirming the judgment of the ALJ. He claims that the ALJ erred by denying the interim presumption on the basis of a balancing of the evidence; Revak contends that the qualifying ventilatory study or studies and Dr. Bhatt's report mandate invocation of the presumption as a matter of law. Revak also points in this regard to evidence in the record undermining the ALJ's finding that Dr. Bhatt's report was unreliable. Appellees, National Mines and the Director of the Office of Workers' Compensation Programs, respond that the ALJ quite properly balanced the evidence in deciding not to invoke the presumption. Appellees also contend that the evidence supports the ALJ's determination that Dr. Bhatt's report was not credible.[3]

## III.

In refusing to invoke the interim presumption, the ALJ weighed all of the evidence in each of the relevant categories:

---

**2.** There is no dispute that Revak has met this requisite.

**3.** Revak also makes a second claim: that the ALJ erred in his final determination that Revak is not totally disabled by pneumoconiosis because the ALJ failed to recognize that the definition of pneumoconiosis under the statute and regulations is broader than that in common usage. Revak claims that requirements of the statute are met by demonstrating "any chronic pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine

employment." 20 C.F.R. § 727.203. He then points to the statements of both Dr. Kaplan *and* Dr. Anderson that Revak's exposure to coal dust had exacerbated or aggravated his symptoms and that it would not (or might not) be medically advisable for Revak to return to employment near the mines (Appendix at 97–98, 108–109, 235). We note that an inability to return to the mines would appear to satisfy the test for total disability set out in 30 U.S.C. § 902(f)(1). However, because we agree with Revak on his first claim, we need not reach the second.

x-rays, ventilatory function studies, blood gas studies, and medical reports. The decision to weigh all the evidence in each category rather than to invoke the presumption on the basis of a single favorable item regardless of the import of the other evidence, accords with the approach taken in *Engle v. Director, Office of Workers' Compensation*, 792 F.2d 63, 64 n. 1 (6th Cir.1986). The *Engle* court provided no reasoning for this position, however.

 Sitting in banc, the Fourth Circuit adopted the contrary position in *Stapleton v. Westmoreland Coal Co.*, 785 F.2d 424 (4th Cir.1986). *Accord Amax Coal Co. v. Director, Office of Workers' Compensation Program*, 801 F.2d 958, 962 (7th Cir. 1986). Although the *Stapleton* court divided on a number of issues, a majority held that a single credible x-ray, a single qualifying ventilatory function study, one qualifying blood gas study, or a qualifying physician's opinion would suffice to invoke the presumption regardless of conflicting evidence that may be present in the record. *Id.* at 426 (per curiam opinion). We agree. Additionally, the *Stapleton* court held that on rebuttal *all* relevant medical evidence must be considered and weighed regardless of the type of evidence forming the basis for the presumption. *Id.* at 427. We also agree.

The four lengthy opinions in *Stapleton* have explored the ramifications of the question before us in enormous depth [4] and we see no point to engaging in such extensive analysis here. We will, however, explain the salient reasons for our endorsement of the position so forcefully stated in the opinions of Judges Hall, Sprouse, and Widener that a single qualifying test or medical report is sufficient to invoke the presumption.

### A.

The most important reason for rejecting the balancing approach to the interim presumption is the language and structure of the regulation itself.[5] The regulation at issue is divided into two parts. 20 C.F.R. § 727.203 Part (a), which is directly at issue

in this case, sets forth the four distinct medical requirements, any one of which if met establishes the interim presumption so long as a claimant has engaged in coal mining for at least ten years. Part (b), provides that this presumption is rebutted if, considering "all relevant medical evidence," the ALJ determines that the claimant is doing or could do his usual coal mine work or comparable, gainful work; that the disability did not arise in whole or in part out of coal mine employment; or that the miner "does not, or did not, have pneumoconiosis."

Subsections (1) and (4) of Part (a), by their own terms, provide that a single qualifying x-ray or a single physician's opinion that a claimant has a disabling pulmonary impairment is sufficient to trigger the presumption: subsection (a)(1) refers to "*a* chest [x-ray]" and subsection (a)(4) refers to "the documented opinion of *a* physician exercising reasoned medical judgment" (emphasis supplied). With respect to the medical requirements under subsections (a)(2) and (a)(3), the regulation uses the plural, employing the term "ventilatory studies" and "blood gas studies." However, as Judge Hall has pointed out in his opinion in *Stapleton*, 785 F.2d at 434, the use of the plural only reflects the fact that a ventilatory and blood gas test consists of a set of many studies. For example, the regulations demonstrate that each pulmonary function test consists of several studies and must be accompanied by two to three tracings of each test performed. 20 C.F.R. §§ 410.430, 718.103. Similarly, a blood gas study will often have separate components, one reflecting the results obtained at rest and the other reporting the results of testing during exercise. 20 C.F.R. § 718.105.

That a single qualifying test or medical opinion is sufficient to invoke the presumption is evident from the Secretary of Labor's comments addressing the standard of rebuttal:

[T]he Department cannot, as has been requested by some, look for the single item of evidence which would qualify a

---

**4.** The *Stapleton* opinions consume some 44 pages of the Federal Reporter. *Stapleton* also dealt with several questions that are not presented by the present record.

**5.** Congress declined itself to prescribe the qualifications for benefits in the Black Lung Benefits

Benefits Reform Act of 1977, Pub.L. No. 95–239, 92 Stat. 95 (1977), signed into law on March 1, 1978 ("The 1978 Amendments") and instead delegated this authority to the Secretary of Labor.

claimant on the basis of the interim presumption, and ignore other previously obtained evidence. This does not mean that *the single item of evidence which establishes the presumption* is overcome by a single item of evidence which rebuts the presumption.

*Notice of Final Rulemaking under the Black Lung Benefits Reform Act of 1977,* 43 Fed.Reg. 36,826 (1978) (emphasis added).

In contrast to subsection 203(a), subsection 203(b), dealing with the standards for rebuttal, explicitly states that the ALJ must consider all the relevant medical evidence and must deem the presumption rebutted if, after weighing the evidence, the ALJ is satisfied that one of the rebuttal grounds is proven. One explicit ground for rebuttal, § 203(b)(4), is that all the relevant evidence demonstrates that the miner does not have pneumoconiosis.[6] Such a provision would be superfluous if the ALJ were already to have considered all the relevant medical evidence at the initial presumption stage. Moreover, the appellees' theory would place the burden on the miner to prove by a preponderance of the medical evidence at the presumption stage that he has pneumoconiosis. Such an interpretation would deprive the interim presumption of any presumptive effect.[7]

**B.**

In addition to the language of the regulation, the legislative history is helpful to Revak's position although it does not specifically address the question whether a single study is sufficient to invoke the presumption. *Cf. Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945) ("intention of Congress ... may be relevant" for interpreting regulation). As Judge Sprouse described in detail in *Stapleton,* Congress was deeply concerned about the difficulty of establishing pneumoconiosis through medical evidence. Testimony before Congressional committees and the statements of influential Congressmen repeatedly emphasized the fact that negative test results were not highly probative of a lack of pneumoconiosis, and that the only truly accurate test was by autopsy, a method that was not of help to living miners.[8]

Furthermore, Congress was troubled by grim statistics indicating the devastating extent to which miners suffered from pneumoconiosis. One study cited by Congressman Paul Simon, for example, found that autopsies of 400 coal miners with 21 years or more in the coal mines showed that 90–95% of them had pneumoconiosis. House Comm. on Education and Labor, 96th Cong., 1st Sess., *Black Lung Benefits Reform Act and Black Lung Benefits Revenue Act of 1977* 282–83 (Comm. Print Feb. 1979). This evidence identified by Congress afforded the Labor Department good reason for establishing a presumption of total disability due to pneumoconiosis based on the findings of a single positive test or medical opinion, thus shifting some of the risk of faulty test results onto the employer. In addition, the legislative history indicates that Congress contemplated the use of "all available evidence" only as a rebuttal mechanism, further endorsing our overall interpretation of § 718.203.[9]

6. 20 C.F.R. 727.203 provides in pertinent part: (b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, *all relevant medical evidence* shall be considered. The presumption in paragraph (a) of this section shall be rebutted if: ...
(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
(Emphasis added.)

7. The appellees argue that invocation of the interim presumption on the basis of one item of evidence gives disproportionate effect to that item of evidence offered by the claimant. This argument is unconvincing, for the rebuttal phase rights any alleged imbalance.

8. According to one study, cited by Senator Long, the autopsies of two hundred deceased coal miners revealed the presence of pneumoco-

niosis in twenty-five percent of them even though x-rays contained in their medical records were negative for the disease. Senate Subcomm. on Labor, Comm. on Labor and Public Welfare, 94th Cong., 1st Session, *Legislative History of the Federal Coal Mine Health and Safety Act of 1969 (Public Law 91–173) As Amended Through 1974 Including Black Lung Amendments of 1972* 2069 (Comm.Print Aug. 1975).

9. The House included in its Report a letter from the Solicitor of Labor defending the constitutionality of the interim presumption on the grounds that all relevant evidence would be considered at the rebuttal stage:
A rebuttable presumption suffers from constitutional infirmity only if it is, in fact, irrebuttable in light of the circumstances surrounding its applicability. This is clearly not the case

The history of the regulation also reveals that Congress was intimately involved with the development of standards and procedures for dealing with black lung claims. Although Congress delegated the authority to develop Black Lung standards to the Secretary of Labor, Congress and its staff were apparently involved in the writing of regulations, including this interim presumption provision. *See* Solomons, *A Critical Analysis of the Legislative History Surrounding the Black Lung Interim Presumption and a Survey of Its Unresolved Issues*, 83 W.Va.L.Rev. 869 (1981). According to the history compiled by counsel for the Labor Department at the time, Congressional staff persons even directed the deletion of a proposal requiring the weighing of all medical test evidence prior to invoking the presumption. *Id.* at 896 n. 138.

### C.

The appellees remonstrate that the *Stapleton* approach does not accord the required deference to the interpretation of the agency charged with administration of the statute. Since *Bowles v. Seminole Rock and Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945), the law has been settled that courts must defer to a consistent interpretation by an agency of its own regulation unless "plainly erroneous or inconsistent with the regulation." *See Barnes v. Cohen*, 749 F.2d 1009, 1018 (3d Cir.1984).

In this case, however, the Labor Department interpreted this regulation until 1983 in the manner advocated by Revak and accepted by us. *See Stiner v. Bethlehem Mines Corp.*, 3 B.L.R. 1–487 (1981) (single reasoned and documented opinion of physi-

cian invokes presumption; other medical evidence considered on rebuttal). As far as we can tell, that interpretation lasted until *Meadows v. Westmoreland Coal Co.*, 6 B.L.R. 1–773 (1984). The *Meadows* decision then reversed this practice entirely on the basis of the Fourth Circuit's decision in *Consolidation Coal Co. v. Sanati*, 713 F.2d 480 (4th Cir.1983), which the Fourth Circuit overruled in *Stapleton*. The *Meadows* decision did not articulate any other reason for this substantial change of policy, nor did it articulate any facts on which it relied to justify the new policy.

Notwithstanding the deference required by *Bowles*, an agency cannot change an established course of conduct without articulating "a reasoned analysis" that makes a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). We do not believe that we should defer to the Labor Department's change of policy in the absence of such an articulation.[10]

Furthermore, even if the Labor Department's interpretation had been consistent, the result would be no different, for we may not uphold an agency's interpretation of its own regulation if it is "plainly erroneous." *Bowles*, 325 U.S. at 414, 65 S.Ct. at 1217. We have already explained our understanding of § 727.203 based upon its language and structure and the legislative history. Neither the BRB decision nor the Director has offered any explanation for how we might find support for the Director's position in the language of the regulation. At the very least, a reasonable

---

with respect to the interim criteria. Any coal operator has ample opportunity and resources available to him to present sound medical evidence tending to rebut the presumption of eligibility created by the interim criteria. Indeed, a coal operator often has greater resources at his disposal than does a claimant. Expert medical testimony, as well as a claimant's actual work responsibilities, are only two examples of possible rebutting evidence. H.R.Rep. No. 151, 95th Cong., 2d Sess., *reprinted in* (1978) *U.S.Code Cong. & Ad.News*, 237, 255. Obviously, if the relevant evidence were balanced at the initial presumption stage, there would be no potential constitutional infirmity, and the Solicitor would have no need to stress the broad consideration of all evidence at the rebuttal stage.

**10.** We also doubt that we should defer to an agency reinterpretation of its own regulation that so substantially changes the meaning of the regulation as to amount to the promulgation of a new regulation without opportunity for notice and comment. Notwithstanding our usual deference to an agency's interpretation of its own regulation, an agency must abide by its own regulations until it rescinds them. *United States v. Nixon*, 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3101–02, 41 L.Ed.2d 1039 (1974). That obligation is especially important if a regulation follows notice and comment, for the regulation then is the product not only of agency expertise but also of public participation and occasionally, as occurred in this case, of Congressional participation as well.

interpretation must be advanced to explain why the regulation's insistence that all relevant evidence be considered at the rebuttal stage would not be superfluous if that full consideration had already occurred at the presumption stage.

Even in the Director's brief, the agency does not provide an explanation, but refers us only to the reasoning offered by Judge Phillips in his concurring and dissenting opinion in *Stapleton*. Yet that opinion offers a complicated interpretation of § 727.-203, which contracts the evidence relevant at the rebuttal stage even as it makes more evidence available at the presumption stage.[11] The agency has cited us no indication of its willingness to accept the full ramifications of Judge Phillips' interpretation. In the absence of such a showing, we can only consider this endorsement of Judge Phillips' views to be a litigation position to which we owe no deference. *See Kickapoo Oil Co. v. Murphy Oil Corp.*, 779 F.2d 61, 66–67 (Temp.Em.Ct.App.1985) (litigation position in amicus brief not accorded deference); *Alaniz v. Office of Personnel Management*, 728 F.2d 1460, 1465 (Fed.Cir.1984) (no deference accorded in absence of evidence that agency applied interpretation in practice); *Ames v. Merrill Lynch, Pierce, Fenner & Smith*, 567 F.2d 1174, 1177 n. 3 (2d Cir.1977) (no deference to amicus position in absence of indication that interpretation is actual practice).

Because we lack any articulated agency reason for interpreting § 727.203 other than as we have done, we conclude that the agency's interpretation is plainly errone-ous, and we reject it. We hold instead that Revak was entitled to the benefit of the interim presumption so long as there was at least one qualifying ventilatory study or one qualifying physician's opinion.

### III.

Examination of the record reveals unequivocally that there is at least one qualifying ventilatory study sufficient to invoke the interim presumption. Additionally, there was one qualifying physician's opinion. We do not gainsay that the medical report of Dr. Anderson was comprehensive, but the report of Dr. Bhatt was sufficient to invoke the presumption under the law. A physician's report invokes the presumption if it is: (1) documented, (2) demonstrates an exercise of reasoned medical judgment, and (3) establishes a totally disabling respiratory or pulmonary impairment. *See* 20 C.F.R. 727.203(a)(4) (1980). According to the Secretary's comments when issuing the regulation, documentation need not "consist exclusively of objective medical tests. It is intended that the physician's observation of the miner, personal knowledge of the miner's condition and work history, and other similar matters would constitute documentation." 43 Fed. Reg. at 36,826.

Dr. Bhatt's diagnosis of total and permanent disability as a result of coal worker's pneumoconiosis was based, inter alia, upon the patient's history of 35 years of coal mine employment, his complaints of shortness of breath for 12 years, and the findings of a ventilatory study indicating ab-

---

**11.** Judge Phillips would find the authority to balance evidence at the presumption stage essentially by bifurcating § 727.203(a) into different kinds of presumptions. Under this approach, the ALJ would weigh all the relevant evidence under each medical category specified by § 727.203(a) in deciding whether to invoke the presumption; once invoked, the facts found would become irrevocable. Rebuttal under § 727.203(b) would then be permissible only on grounds that did not support the invocation of the presumption. · For example, if the ALJ found the presumption invoked after weighing all the x-rays, that presumption would irrevocably establish that the miner has pneumoconiosis. The employer could rebut this presumption not by introducing evidence tending to disprove the existence of pneumoconiosis, but only by demonstrating that the individual is not totally disabled or did not develop pneumoconiosis as a result of his employment. Interpreting the regulation in this way, only grounds now set forth under Part (b) would be available for rebuttal of any particular presumption, and those grounds would differ depending on the reason for the presumption.

We consider Judge Phillips' interpretation well refuted by the opinion of his colleague Judge Sprouse. 785 F.2d at 454–55 & nn. 8–12. As Judge Sprouse explained, the regulation does not distinguish different kinds of presumptions, and the regulation clearly provides that all the grounds under Part (b) are available for rebutting the presumption using "all the relevant evidence." Furthermore, we note that Judge Phillips' interpretation might permit an unrebuttable proof of pneumoconiosis through a mere preponderance of one kind of medical evidence, e.g., ventilatory studies, even though the unanimous mass of other kinds of medical evidence, · e.g., x-rays and doctors' opinions, indicated to the contrary. Such an interpretation might very well violate the statutory requirement that decisions be based on "all relevant evidence." 30 U.S.C. § 923(b).

normal pulmonary function (Appendix at 30, 45). Under the regulations, the report was thus both documented and qualified as a reasoned medical judgment. Under these circumstances, the ALJ should have invoked the interim presumption.[12]

For the foregoing reasons, the petition for review will be granted and the case remanded to the board for further proceedings consistent with this opinion.

## OPINION SUR DENIAL OF PANEL REHEARING

BECKER, J., Circuit Judge.

Both the Director of the Office of Workers' Compensation and National Mines, Inc. have petitioned for rehearing in this case. In doing so, they cite for the first time on this appeal a number of decisions of the Benefits Review Board (BRB) and of federal courts in support of the contention that the Director has consistently advocated the balancing approach to invocation of the interim presumption that this panel has rejected.[1]

The new citations do not clearly relate to the Director's understanding of 20 C.F.R. § 718—many of the citations actually deal with Part B benefits under 20 C.F.R. § 410. Moreover, it is not a simple matter for us to divine the Director's position from judicial or agency decisions, and the briefs in the cases relied on by the parties to show the Director's "consistent position" are not readily accessible to us. However, the newly supplied citations do suggest that the agency has not recently reversed its position. Our discussion of agency deference, which was predicated in part on a reversal of agency position, may therefore have been off the mark.

Even if the agency has consistently interpreted the regulation in the manner advocated by Respondents—and we still find this view difficult to square with the comments of the Secretary when promulgating the regulation, *see* 43 Fed.Reg. 36771, 36826 (1978)—we continue to reject that interpretation as inconsistent with the regulation. For regulations to have significance, we must recognize limits on the malleability of words. As we interpret the regulation, we find no ambiguity. Only if we follow the Director and read the regulation to require complex shifting of different kinds of presumptions must we imply language that simply is not present.

As we explained in our panel opinion, the interpretation expressed by Judge Phillips in *Stapleton v. Westmoreland Coal Co.*, 785 F.2d 424 (4th Cir. 1986), *cert. granted sub nom. Mullins Coal Co. of Virginia v. Director, O.W.C.P.*, —— U.S. ——, 107 S.Ct. 871, 93 L.Ed.2d 826 (1987), now endorsed by the Director, provides that some facts may be proved by some kinds of medical evidence without possibility of rebuttal by other kinds of medical evidence. Such a view is at least strongly in tension with the statutory requirement that benefits decisions be based on all the relevant evidence. Such a view is also difficult to square with the Secretary of Labor's comments in explaining why all relevant evidence must be considered in rebutting the presumption. The Secretary stated that the Department does not "have authority to exclude any relevant evidence from consideration in connection with any case." 43 Fed. at 36826.

Finally, we are unpersuaded by the predictions *in terrorem* about the impact of our decision. Under our holding, and under the plain language of the regulation, the weighing of evidence that does not occur before invoking the presumption simply occurs at the rebuttal stage. All relevant evidence must be considered at that point, and the mine operators may rebut on the basis of all the grounds provided by § 727.203(b).[2]

In any event, the Supreme Court has granted certiorari in *Stapleton* and will determine the proper interpretation of the regulation.

The petition for rehearing will be denied.

---

**12.** While appellee's contend that Dr. Bhatt's report was not credible, they do not appear to contend that it was non-qualifying under the Secretary's regulations.

**1.** In the panel opinion, *supra* at 1002, we relied on the BRB's decision in Stiner v. Bethlehem Mines Corp., 3 B.L.R. 1–487 (1981), as indicating a view of 28 C.F.R. § 727.203 contrary to that advocated by the Director here.

**2.** Our holding actually provides a coal mine operator more grounds for rebutting a presumption than recognized under the interpretation of the Director, advocated through Judge Phillips' opinion in *Stapleton*. The only burden our interpretation imposes on the coal mine operator is the burden of persuasion once the miner has introduced qualifying evidence under § 727.-203(a). In light of the strict, qualifying standards evidence must satisfy to invoke the pre-

sumption, such a shifting of the burdens represents a rational shifting of the risk of error. As the Secretary stated when promulgating the regulations: "The Act embodies the principle that doubt is to be resolved in favor of the claimant, and that principle plays an important role in claims determinations both under the interim presumption and otherwise." 43 Fed.Reg. at 36826.