**UNITED STATES of America, Plaintiff,**

v.

**UNDETERMINED QUANTITIES OF AN ARTICLE OF DRUG, ... (ANUCORT HC SUPPOSITORIES), Defendants.**

No. Civ. A. 85–5232.

United States District Court,
D. New Jersey.

Aug. 24, 1987.

Paul J. Dillon, Asst. U.S. Atty., Office of the U.S. Attorney, D.N.J., Newark, N.J., David G. Adams, Associate Chief Counsel for Enforcement, U.S. Food and Drug Admin., Rockville, Md., for plaintiff.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Peter R. Sarasohn, Roseland, N.J., Kleinfeld, Kaplan and Becker, Richard S. Morey, Washington, D.C., for claimant G & W Laboratories, Inc.

## OPINION

SAROKIN, District Judge.

In this action for seizure and condemnation of a drug, the United States moves for summary judgment.

## BACKGROUND

"Anucort Hemorrhoidal Suppositories with Hydrocortisone Acetate" (Anucort) is a prescription drug sold to the public for use in treatment of hemorrhoids. G & W Laboratories, claimant herein, began marketing a drug under this label in 1980.

On November 7, 1985, the United States seized an undetermined quantity of Anucort, pursuant to a complaint of forfeiture. The government's amended complaint, filed November 14, 1985, seeks condemnation of the seized drug on two grounds. First, the government alleges that Anucort is a new drug, as defined by relevant federal statute, that has not been approved by the Food and Drug Administration (FDA). Second, the government alleges that Anucort is a prescription drug under the statute that has been misbranded.

G & W's answer contains several defenses. First, G & W contends that Anucort is not a new drug and therefore not subject to the required FDA approvals. Second, G & W claims that Anucort is exempted from the new drug approval scheme because it was commercially used and sold prior to the statute's enactment date. Third, G & W contends that the court must remand the matter to the FDA for an initial administrative hearing concerning Anucort's status as a new drug. Fourth, G & W argues that FDA's internal enforcement guidelines preclude this action.

On June 11, 1986, the government moved for summary judgment. The government also moved before the Hon. Ronald J. Hedges, U.S. Magistrate, for a stay of discovery pending resolution of the summary judgment motion. G & W cross-moved for a continuance of the summary judgment motion pending further discovery. On October 16, 1986, Magistrate Hedges granted the government's motion for a stay of discovery and denied G & W's motion for a continuance.

G & W appealed the Magistrate's order to this court. On November 24, 1987, at a hearing on the motion, the parties agreed to proceed with the summary judgment motion solely on the ground that Anucort is a new drug because there exists no substantial evidence supporting its safety and efficacy.[1]

On February 17, 1987, the court entered an order that 1) reserved decision on G & W's appeal; 2) stated that plaintiff's summary judgment motion would be directed only to "whether there is a lack of substantial evidence to support a finding that the seized drug is generally recognized as effective as contained in Plaintiff's brief in support of its Motion for Summary Judgment"; 3) stating that the government may rely on only one affidavit, to be submitted, "addressing the existence of relevant studies"; 4) granting G & W the right to submit an opposing affidavit; 5) granting the parties leave to depose the respective affiants.

On February 11, 1987, the government submitted the affidavit of Dr. C. Carnot Evans. G & W moved to disregard statements in the affidavit, arguing that its contents violated the court's order. The court, by order dated April 20, 1987, reserved decision on G & W's motion pending its ruling on plaintiff's summary judgment motion. The court also granted G & W the right to depose Dr. Evans and two FDA employees who conducted the literature searches mentioned in Dr. Evans' affidavit.

G & W chose to depose only Mr. Kenter, one of the FDA employees. On May 26, 1987, the court granted G & W's motion to require the government to provide G & W with citations of studies referred to in notes prepared by Mr. Kenter.

The court now considers plaintiff's motion for summary judgment, as reshaped by this procedural history.

---

1. Counsel for the FDA described the ground upon which the motion would be based as the "lack of substantial evidence to form a basis for general recognition," or the "first heading" of its memorandum in support. Transcript of Proceedings, November 24, 1986, at 27:4 to 7.

## DISCUSSION

### I. *Substantial evidence*

Before the court is the question of "whether there is a lack of substantial evidence to support a finding that the seized drug is generally recognized." Plaintiff, to prevail on its motion for summary judgment, must demonstrate that no genuine issue of material fact exists with respect to this question.

"Substantial evidence," in this context, means

> evidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling or proposed labeling thereof.

21 U.S.C. § 355(d).[2]

At dispute is the nature of the "adequate and well-controlled investigations" required by the above definition. The government contends that § 355(d) requires published studies of the product Anucort itself. G & W contends that studies of other drugs containing the same active ingredient (hydrocortisone acetate) as Anucort constitute substantial evidence under § 355(d).[3]

The court, in evaluating the validity of the FDA's interpretation of § 355, must follow the analysis set forth by the Supreme Court in *Chevron U.S.A. Inc. v.*

*Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the statutory provision unambiguously expresses Congress' intent on the precise question at issue, the court and the agency must follow the plain language; however, if the provision is silent or ambiguous as to the relevant issue, the court must defer to the agency's interpretation as long as that interpretation is reasonable. See *id.* at 842–44, 104 S.Ct. 2781–82; *Young v. Community Nutrition Inst.,* 476 U.S. 974, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959 (1986) (applying *Chevron* to an FDA interpretation of the Food, Drug, and Cosmetic Act).

Section 355(d), defining "substantial evidence," does not directly address whether the necessary studies must be of the drug product itself. The language employed— "... investigations ... on the basis of which it could be fairly and reasonably be concluded by such experts that the drug will [be effective]"—is consistent with either party's interpretation. Under such circumstances, *Chevron* dictates that this court accept FDA's interpretation of § 355(d).

Furthermore, such a result is consistent with prior judicial interpretation of the new drug provisions of the Act.

▮ As an initial matter, "drug," as used in § 321(p) and § 355(d), refers to the product itself, and not simply the product's active ingredients. See *United States v. Generix Drug Corp.,* 460 U.S. 453, 456–57, 103 S.Ct. 1298, 1300–01, 75 L.Ed.2d 198 (1983). Two drugs with the same active ingredients, but different inactive ingredi-

---

**2.** Technically, the question before the court is whether Anucort is "generally recognized" as safe and effective by qualified experts, so as to be outside the definition of a "new drug." 21 U.S.C. § 321(p). However, a finding of "general recognition" under § 321(p) must be based on at least "substantial evidence" as defined in § 355(d). See *United States v. Rutherford,* 442 U.S. 544, 549 n. 7, 99 S.Ct. 2470, 2474 n. 7, 61 L.Ed.2d 68 (1979); *Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 629, 632, 93 S.Ct. 2469, 2483, 2484, 37 L.Ed.2d 207 (1973).

**3.** G & W also contends that Dr. Evans affidavit erroneously states, at ¶ 15, that there are no such studies of "any product with the same

formulation of active ingredients as the Anucort product." The government responds that it was aware of these Anusol studies, but that the formulation of the specific Anusol drugs tested is different than that of Anucort. Furthermore, the studies of Anusol–HC do not purport to be adequate and well-controlled. Even accepting, however, that a genuine issue exists as to the existence of studies of the same formulation of active ingredients, such an issue is not material given this court's holding that studies of drugs other than Anucort may be substantial evidence of Anucort's effectiveness only if 1) the active ingredients are the same and 2) the drugs are demonstrably bioequivalent. *See infra.*

ents (excipients), may be released into the body at different rates. See *id.* at 455, 103 S.Ct. at 1299; *Premo Pharmaceutical Laboratories, Inc. v. United States,* 629 F.2d 795, 805 (2d Cir.1980). For that reason, courts have rejected arguments that studies of approved drugs containing the same active ingredients as a newly marketed product, in and of themselves, constitute substantial evidence that the new product is generally recognized as safe and effective. *See, e.g., United States v. Undetermined Quantities of Various Articles of Drug,* 675 F.2d 994, 1001–02 (8th Cir. 1982); *Premo Pharmaceutical Laboratories, Inc.,* 629 F.2d at 805; *United States v. Premo Pharmaceutical Laboratories, Inc.,* 511 F.Supp. 958, 965–973 (D.N.J.1981); *Pharmadyne Laboratories, Inc. v. Kennedy,* 466 F.Supp. 100, 102–03 (D.N.J.1979), *aff'd,* 596 F.2d 568, 570 (3d Cir.1979).[4]

However, courts have recognized that studies of a "bioequivalent" drug may be used to show safety and effectiveness of a new product. *See United States v. Undetermined Quantities of Various Articles of Drug,* 675 F.2d 994, 1001–02 (8th Cir. 1982); *United States v. Premo Pharmaceutical Laboratories,* 511 F.Supp. at 985–88; *cf. United States v. Generix Drug Corp.,* 460 U.S. at 461, 103 S.Ct. at 1302 (not reaching the question of whether two "demonstrably bioequivalent products" might be considered the same "drug"). Bioequivalent drugs have similar "bioavailability," meaning that the active ingredients in the drugs are absorbed from the drug product at a similar rate and to a similar extent. *See* 21 C.F.R. § 320.1(a), (e).

Moreover, a 1984 amendment to the Act introducing a scheme for abbreviated new drug applications (ANDAs) verifies the significance of bioequivalence. 21 U.S.C. § 355(j). Such applications permit approval of new drug products that are closely related to previously approved products. An ANDA will be approved only if it contains "information to show that the new drug is bioequivalent to the [previously approved] drug." 21 U.S.C. § 355(j)(2)(A)(iv). Congress, by establishing an ANDA procedure with a bioequivalence requirement, confirmed that substantial evidence regarding a new product cannot consist merely of studies of a previously approved product containing the same active ingredients.

■ Neither Congress nor the courts have determined the precise manner by which bioequivalence of two drugs may be established. The government contends first that the Food and Drug Administration (FDA) is the only body capable of properly testing for bioequivalence. *See United States v. Premo Pharmaceutical Corp.,* 511 F.Supp. at 987. Alternatively, the government argues that substantial evidence of bioequivalence must meet the basic statutory definition—that is, adequate and well-controlled, published studies. Given the current record in this matter, the court need not resolve this question. The court holds that bioequivalence must be demonstrated by "substantial evidence" as defined in § 355(d).

■ Based on the required deference to the FDA's interpretation as well as available precedent, the court holds that, as a matter of law, G & W may satisfy the "substantial evidence" requirement only by (1) adequate and well-controlled studies of the product Anucort itself or by (2)(a) adequate and well-controlled studies of another drug with the same active ingredients as Anucort and (b) adequate and well-controlled studies demonstrating that the oth-

---

4. *United States v. Articles of Drug (Lannett),* 585 F.2d 575 (3d Cir.1978), cited by G & W, is neither binding nor persuasive authority to the contrary. The Third Circuit, in dictum, supported G & W's position concerning extrapolation of studies. However, two courts within this district have expressly rejected the *Lannett* reasoning as contrary to the Act's intent. *See United States v. Premo Pharmaceutical Laboratories, Inc.,* 511 F.Supp. 958, 973 (D.N.J.1981); *Pharmadyne Laboratories, Inc. v. Kennedy,* 466 F.Supp. 100, 102–03 (D.N.J.), *aff'd on other grounds,* 596 F.2d 568, 570 (3d Cir.1979) (distinguishing, but not expressly rejecting *Lannett*). Furthermore, the Supreme Court's expression that differences in excipients must be considered in evaluating the safety and effectiveness of a new drug, *United States v. Generix Drug Corp.,* 460 U.S. 453, 460–61, 103 S.Ct. 1298, 1302–03, 75 L.Ed.2d 198 (1983), is inconsistent with *Lannett.*

er drug and Anucort are bioequivalent. Dr. Evans' uncontradicted affidavit establishes that G & W can satisfy neither of these requirements. The FDA literature search failed to reveal any published studies of the Anucort product or any studies "relating to the bioavailability of Anucort." ¶ 15. Dr. Evans, based on the results of the literature search and his personal knowledge, opined that no published studies exist of either the Anucort product, ¶ 16, or Anucort's bioavailability, ¶ 17. This affidavit satisfies plaintiff's burden under Rule 56(c) to establish that there exists no genuine issue of material fact and that plaintiff is entitled to judgment as a matter of law. *See Matsushita Electric Inds. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).[5]

Given this showing by the government, G & W must set forth specific facts showing that a genuine issue exists regarding the substantial evidence question. Fed.R.Civ. P. 56(e); *Matsushita Electric Inds.*, 106 S.Ct. at 1356. The court rejects each of G & W's attempts to raise such an issue.

First, G & W supplies the affidavits of several experts. These affidavits do not contradict Dr. Evans' statements. These experts all state that they consider Anucort to be safe and effective based on published studies showing that hydrocortisone acetate, Anucort's main active ingredient, is safe and effective. See Declaration of Dr. Vincent P. Zarro, ¶¶ 5, 6, 18; Declaration of Dr. A.W. Martin Marino, ¶¶ 6, 7; Declaration of Dr. Peter J. Wilk, ¶¶ 5, 6, 7; Declaration of Dr. Steven Z. Brandeis, ¶ 6; Declaration of Dr. Ira Mark Barash, ¶ 7. These experts state also that medical experts have long accepted extrapolation of results from one corticosteriod (the class of active ingredients used in this treatment) to another.

The affidavits do not raise a triable issue of fact regarding the "substantial evi-

dence" question. As stated above, courts have consistently rejected the argument that studies of approved drugs containing the same active ingredients as a newly marketed product, in and of themselves, constitute substantial evidence that the new product is safe and effective. Furthermore, statements that medical experts generally permit extrapolation among active ingredients in this area, even if accepted by the court, do not address the question of bioequivalence, or how the mixture of these ingredients with different excipients affects release of the ingredients into the body.

Second, G & W asserts that a triable issue exists as to whether Anucort is exempted from demonstrating bioequivalence under 21 C.F.R. § 320.22(b)(2). This section waives the requirement for submission of evidence of bioavailability for "a topically applied preparation, e.g., a cream, ointment, or gel, intended for local therapeutic effect." The government contends that suppositories are not "topically applied preparations"; G & W's experts disagree. Interpretation of this regulation, however, is a matter of law, and the court must defer to FDA's reasonable interpretation of its own regulation. *See, e.g., Vineland Chemical Co. v. United States Envtl. Protection Agency*, 810 F.2d 402, 409 (3d Cir. 1987); *Revak v. National Mines Corp.*, 808 F.2d 996, 1002 (3d Cir.1986). The court concludes, as a matter of law, that Anucort is not exempted from presenting evidence of bioequivalence by 21 C.F.R. § 320.22(b)(2).

Third, G & W attempts to raise a triable issue of fact by maintaining that the FDA "has announced that it is appropriate to extrapolate from studies with one product to demonstrate effectiveness for other similar products." Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, at 14. G & W's argument is prem-

---

**5.** The court denies G & W's motion to strike Dr. Evans' affidavit. The court relies on ¶¶ 15–17, which contain the results of the literature search and the doctor's opinions based on these results that no published studies exist relating to the safety and effectiveness of Anucort itself or to Anucort's bioavailability. Given the court's

interpretation of the Act, these statements are not contrary to the court's February 17, 1987 order stating that the affidavit "shall concern the results of a literature search as to whether there are published studies concerning the safety and effectiveness of Anucort."

ised principally on a March 1984 statement by Harry M. Meyer, Jr., then Director for FDA's Center for Drugs and Biologics. In that statement, dealing with effectiveness of a combination drug containing neomycin as an active ingredient in combination with a corticosteroid similar to that used in Anucort, Meyer stated:

> The Director has determined that this finding of effectiveness should not be limited to neomycin in combination with one specific corticosteriod because there is no corticosteriod that is unique with respect to therapeutic and toxic effects. [Citations omitted.] Therefore, the Director considers the two adequate and well controlled studies that were submitted in support of the neomycin/fluocinolone combination to provide substantial evidence of effectiveness for the other products listed above, each of which is an ointment, cream, or lotion that contains neomycin with an effective corticosteriod.

49 Fed.Reg. 11888, 11889 (1984).

This statement does not raise a triable issue of fact. The statement explains only that corticosteroids, as active ingredients, are equally effective. The statement does not address, however, any questions of bioavailability—that is, how these active ingredients, when mixed with different excipients, are released to the body. Therefore, this FDA statement does not explicitly state that a finding of effectiveness for one drug may be extrapolated to another drug without an analysis of the two drugs bioequivalence.

However, the FDA statement does not indicate that a bioequivalence finding was made in this particular case.[6] Even assuming that FDA did make such a finding in that matter, the law is plain that extrapola-tion based solely on identical active ingredients is improper—some finding of bioequivalence is required. Given this, FDA's possible transgressions in approving this combination drug are irrelevant to the question of substantial evidence to support a finding of effectiveness of Anucort. Any issue of fact raised by G & W concerning FDA action on the combination drug application is not material to this matter.[7]

G & W, though failing to oppose plaintiff's motion by raising a genuine issue of fact under Rule 56(c), contends also that the court must deny the motion because further discovery is needed. Rule 56(f) permits a party to oppose a summary judgment motion by identifying facts essential to its opposition upon which further discovery is needed.

G & W states that further discovery is needed to ascertain "evidence of specific instances in which FDA has approved drugs based on extrapolation." Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, at 24. G & W maintains that this information is relevant "depending on how similar the drugs approved by extrapolation are to Anucort." The court rejects G & W's relevance argument. This court has held, as a matter of law, that studies of an approved drug may not be extrapolated to a newly marketed product simply because the new product contains the same active ingredient as the approved drug—some evidence of bioequivalence is required. This principle has been recognized by several courts and is clearly the present position of the FDA. *See, e.g., United States v. 118/100 Tablet Bottles*, 662 F.Supp. 511, 512 (W.D.La. 1987). G & W could not defeat plaintiff's motion by demonstrating specific instances

---

**6.** The statement indicates that requirements for *in vivo* (in the human body) bioavailability testing were waived by regulation for the drug product at issue. 49 Fed.Reg. at 11890. The government, in their brief, state that "FDA is still required to perform a biopharmaceutical analysis." Memorandum of Law in Reply to Claimant's Response to Motion for Summary Judgment, at 29 n. 18. Nowhere does the FDA statement indicate, however, that FDA determined that the two combination products in-volved in this situation were bioequivalent before FDA permitted the extrapolation of studies.

**7.** G & W also points to a January 1982 statement by an associate director at FDA to the effect that studies of effectiveness of a corticosteroid in curing certain conditions will be extrapolated to prove effectiveness in curing other conditions. Such a statement is irrelevant to whether FDA requires substantial evidence of bioequivalence between two different drug products.

in the past where FDA may have deviated from the law; as stated above, such past transgressions would not relieve FDA of its statutory duty in this matter.

The court concludes that plaintiff has demonstrated, as a matter of law, that there exists a lack of substantial evidence to support a finding that Anucort is generally recognized as safe and effective.[8] The court further concludes that G & W has not demonstrated a need for further discovery to oppose plaintiff's summary judgment motion on this issue.

## II. G & W's affirmative defenses

Plaintiff, to prevail on its motion for summary judgment, must also demonstrate that G & W's affirmative defenses fail as a matter of law.

### A. Grandfather clause

■ G & W alleges in its answer that Anucort falls within a 1962 amendment to § 321(p) that provides:

> In the case of any drug, which, on the day immediately preceding the enactment date, (A) was commercially used or sold in the United States, (B) was not a new drug as defined by § 201(p) of the basic Act [21 U.S.C. § 321(p)] as then in force, and (C) was not covered by an effective application under section 505 of that Act, the amendments to section 201(p) made by this Act shall not apply to such drug when intended solely for use under conditions prescribed, recommended, or suggested in labeling with respect to such drug on that day.

Pub.L. 87–781, § 107(c)(4) (1962). A drug is exempt from the new drug provisions of the act if four conditions are met: 1) the drug was commercially used or sold in the U.S. prior to October 1962; 2) the drug was not a "new drug" under the pre-amendment Act; 3) the drug was not covered by an effective new drug application prior to October 1962; 4) the drug is currently intended solely for use under conditions prescribed or recommended in its 1962 labeling. *See United States v. Articles of Drug: 5,906 Boxes,* 745 F.2d 105, 108 (1st Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1358, 84 L.Ed.2d 379 (1985). This regulatory exemption must be strictly construed, and G & W has the burden of proof as to each condition. See *id.* at 113.

The government may obtain summary judgment dismissing this defense if it can establish that no genuine issue of fact exists for any of the four necessary conditions. The government argues, based on FDA records,[9] that Anucort fails to meet any of the requirements.

■ G & W responds that the declaration of Carl J. Greenblatt, G & W's founder and chairman of the board, creates a genuine issue of fact that, under Rule 56(c), precludes the grant of summary judgment. The court finds, however, that G & W's grandfather clause fails as a matter of law even upon crediting Mr. Greenblatt's declaration.

The grandfather clause requires that the "drug" must have been commercially sold or used in the United States prior to 1962. Mr. Greenblatt's statement concerning this requirement is as follows:

> Ever since its introduction in 1958–59, G & W has regularly manufactured and distributed an Anusol–HC formula suppository. Originally these drugs were labeled simply as "hemorrhoidal suppositories with hydrocortisone acetate."

---

8. The court, for the same reasons expressed above, rejects G & W's argument that Anucort falls into an exception to the substantial evidence standard enunciated in *Weinberger v. Bentex Pharmaceuticals,* 412 U.S. 645, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1973). G & W's argument in this regard is nothing more than a reformulation of its main argument in a different guise.

The court's holding regarding substantial evidence obviates the need to address plaintiff's argument that Anucort fails to meet the requirements for a "combination drug."

9. The records are referred to in the Declaration of Bruce E. Byer, (Plaintiff's Exhibit 8 in Support of Summary Judgment) and Plaintiff's Response to Claimant's Discovery Requests Related to the 1962 Grandfather Clause (Plaintiff's Exhibit 8 in Reply to Claimant's Response to Motion for Summary Judgment). The court, in addressing G & W's Rule 56(f) defense, will discuss the propriety of using this information under the court's previous orders.

However, since 1980–81, *the same formula product* has borne the brand name "Anucort" and is called Anucort Hemorrhoidal Suppositories, as well as being sold on a private label basis to some larger customers.

Greenblatt declaration, ¶ 8 (emphasis added). Paragraph 9 of the declaration clarifies that "the same formula product" means "hemorrhoidal suppositories containing hydrocortisone acetate." Thus, G & W's grandfather clause defense rests on the same flawed premise as its "substantial evidence" argument—that Anucort has long been recognized as safe and effective because its active ingredient has long been so recognized. As explained above, the term "drug", as used in § 321(p), refers to the product itself, not simply the product's active ingredients. *See United States v. Generix Drug Corp.*, 460 U.S. 453, 456–57, 103 S.Ct. 1298, 1300–01, 75 L.Ed.2d 198 (1983). Even accepting Mr. Greenblatt's declaration, no genuine issue of fact exists as to whether the product Anucort was commercially sold prior to 1962.

Furthermore, Mr. Greenblatt's declaration fails to raise an issue as to whether Anucort is currently prescribed for use in accordance with its 1962 labeling. "Labeling" under the Act means written or printed material affixed to an article or its container, or accompanying the article. 21 U.S.C. § 321(m). The declaration fails to describe the 1962 labeling and no label is affixed as an exhibit. Under these circumstances, G & W cannot demonstrate that the current use conforms to the prior labeling. In fact, the declaration does not even allege that this condition is satisfied.

The court holds that G & W has failed to raise a genuine issue of fact under Rule 56(c) with regard to two essential elements of its grandfather clause defense.[10] G &

W also argues under Rule 56(f) that G & W requires further discovery to oppose plaintiff's motion. The court disagrees, and affirms the Magistrate's order denying G & W's request for a continuance.

Rule 56(f) requires a defending party to set forth "facts essential to justify the party's opposition" upon which further discovery is needed. G & W states, with regard to the grandfather clause defense, that it "believes that other relevant information may be in the files of FDA." Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, at 24. More specifically, G & W seeks discovery of "FDA's records showing the fact of G & W's manufacture of this product prior to 1962." See Reply to Plaintiff's Memorandum in Opposition to Claimant's Appeal from the Magistrate's Order, at 4.[11]

G & W's argument fails. First, plaintiff has now responded to G & W's discovery requests related to the grandfather clause. See Plaintiff's Exhibit 8 in Response. The government's response does not support G & W's position. More importantly, as discussed above, G & W's grandfather clause argument rests on a flawed legal premise—that Anucort is entitled to the defense as long as G & W marketed a product with the same active ingredient prior to 1962. Even if the FDA has documents to verify Mr. Greenblatt's contention that G & W has manufactured "hemorrhoidal suppositories containing hydrocortisone acetate" since 1958, Declaration of Carl J. Greenblatt at ¶ 9, the affirmative defense fails as a matter of law.[12] Denial of a summary judgment motion on Rule 56(f) grounds is not appropriate under these circumstances. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 230 (3d Cir.1987).

---

**10.** The court makes no ruling concerning the other elements.

**11.** The affidavit of Richard S. Morey, filed with the motion for a continuance, identifies facts relating to the "substantial evidence" issue, but not the grandfather clause. ¶ 3.

**12.** For this reason, the court's consideration of the affidavit of Bruce E. Beyer—despite the court's prior order of February 17, 1987—is not

inappropriate. G & W contends that it needs discovery to show that prior to 1962 G & W marketed other products containing Anucort's active ingredient. Mr. Beyer's affidavit is consistent with this fact, ¶ 2(e), Mr. Greenblatt's declaration states it directly, ¶ 9, and the court accepts it as true. G & W requires no further discovery to oppose plaintiff's motion concerning this affirmative defense.

The court grants plaintiff's motion for summary judgment dismissing G & W's grandfather clause defense.

III. *Affirmative defenses seeking remand to FDA*

G & W's other two affirmative defenses seek remand to the FDA for administrative proceedings to determine whether Anucort is a new drug. The court's holding that Anucort, as a matter of law, is a new drug renders these defenses moot. G & W effectively admits this in its brief—"If the [summary judgment] motion is denied, G & W intends to move that the Court remand this case to FDA based on those affirmative defenses." Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, at 26.

## CONCLUSION

The court denies G & W's motion to strike portions of the declaration of Dr. C. Carnot Evans.

The court affirms the Magistrate's order dated October 16, 1986, and thereby denies G & W's motion for a continuance of plaintiff's motion for summary judgment pending further discovery.

The court grants plaintiff's motion for summary judgment.