**CONSOLIDATION COAL COMPANY,**
Petitioner,

v.

**Louis CHUBB, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 83–1225.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 9, 1984.

Decided Aug. 13, 1984.

Douglas A. Smoot, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., for petitioner.

Diane M. Hodes, Dept. of Justice, Washington, D.C., for respondents.

Before COFFEY, Circuit Judge, and FAIRCHILD and PELL,* Senior Circuit Judges.

FAIRCHILD, Senior Circuit Judge.

Consolidation Coal Company petitions for review of a final order of the United States Department of Labor Benefits Review Board affirming the decision and order of an Administrative Law Judge (ALJ) awarding benefits to a former coal miner under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* We affirm.

Louis Chubb worked as a coal miner for more than twenty-five years, the last ten of which were spent in the employ of Consolidation Coal Company in Ohio. From 1944 to 1964 Mr. Chubb had worked in various mines in Indiana. Virtually all of this employment was in underground coal mines, often in extremely dusty conditions.

Mr. Chubb filed a black lung benefit claim on March 25, 1974. He retired July 29, 1975 on the advice of his physician. In November, 1978, a claims examiner of the Department of Labor notified Consolidation Coal that an initial finding had been made under the Federal Mine Safety and Health Act of 1977, as amended, that Mr. Chubb had become totally disabled July 1, 1976, and that Consolidation Coal was liable to pay benefits from that date. Consolidation Coal denied liability and requested a hearing. A hearing was held on October 22, 1979 before an ALJ. On February 25, 1980, the ALJ issued a Decision and Order awarding benefits to the miner. The applicable regulations provide that a claimant who has compiled a work record of at least ten years of coal mine employment is entitled to a presumption of total disability due to pneumoconiosis arising out of such employment if certain conditions exist. The regulations then provide four possible ways in which the presumption is rebutted.

One of the conditions which gives rise to the presumption is that a chest x-ray establishes the existence of pneumoconiosis. 20 C.F.R. § 727.203(a)(1).

The ALJ found that an x-ray referred to as the Beeler x-ray establishes the existence of pneumoconiosis and that the presumption was not rebutted.

Consolidation Coal appealed from the decision of the ALJ to the Benefits Review Board. The Board affirmed. Consolidation Coal now seeks review in this court. It suggests that the Beeler x-ray was "questionable" and argues that in any event that x-ray could not, on this record, establish the existence of pneumoconiosis and give rise to the presumption. Secondly, Consolidation Coal argues that if the presumption did arise, there was no substantial evidence permitting the conclusion that the presumption was not rebutted.

## I. OUR JURISDICTION

■ The Black Lung Benefits Act incorporated the judicial review provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c). *See* 30 U.S.C. § 932(a). Section 921(c) provides for a petition for review of a Benefits Review Board decision to be filed "in the United States court of appeals for the circuit in which the injury occurred."[1] The respondent, Director of the Office of Workers' Compensation Programs, argues that the place of the claimant's last exposure to coal mine dust is the place of injury, and is therefore determinative of where the review should be sought. In this case the place of last exposure is Ohio; thus respondent argues that the Court of Appeals for the Sixth Circuit has exclusive jurisdiction.

The jurisdictional problem arises because pneumoconiosis is a "cumulative" injury. It is caused by extensive, extended expo-

---

* At the time of oral argument Senior Circuit Judge Wilbur F. Pell, Jr. was a judge in regular active service.

1. Section 921(c) has consistently been held to be a jurisdictional provision, not a venue provision. *Hon v. Director, Office of Workers' Compensation Programs,* 699 F.2d 441, 443 n. 1 (8th Cir.1983); *Dantes v. Western Foundation Corp. Ass'n,* 614 F.2d 299 (1st Cir.1980); *Bassett v. Massman Construction Co.,* 120 F.2d 230 (8th Cir.), *cert. denied,* 314 U.S. 648, 62 S.Ct. 92, 86 L.Ed. 520 (1941).

sure to coal dust, and it is impossible to say that any one exposure caused the disease. In the instant case, the miner worked in mines in Indiana for many years before working in mines in Ohio. Therefore he was exposed to coal dust in both the Sixth and Seventh Circuits, although most recently in the Sixth.

To support the contention that the place of last exposure is the place of injury for jurisdictional purposes, respondent relies on cases concerning employer liability under the Longshoremen's Act. Courts have interpreted the Act as assigning disability liability in cumulative injury cases according to the last employer doctrine. This doctrine provides that "the last employer in whose employment an employee was exposed to an injurious stimuli [is] liable for the full amount of the award with no apportionment of damages between successive employers." *United Brands v. Melson*, 594 F.2d 1068, 1073 (5th Cir.1979); *Smith v. Aerojet-General Shipyards, Inc.*, 647 F.2d 518, 523 (5th Cir.1981); *Cordero v. Triple A Machine Shop*, 580 F.2d 1331, 1336 (9th Cir.1978); *General Dynamics Corp. etc. v. Benefits Review Board*, 565 F.2d 208 (2nd Cir.1977). "The policy behind this holding is the need to avoid complex decisions apportioning liability among employers." *Hon v. Director, Office of Workers' Compensation Programs*, 699 F.2d 441, 443 (8th Cir.1983). The Director urges a consistent approach on the issue of jurisdiction.

While the Director's advocacy of consistency has some appeal, the situations are not really parallel. The statutory language does not require, nor is there any clear policy reason for the reading for which the Director contends. In this case, the place of injury merely determines jurisdiction. There is no complex problem of apportionment of liability as in the cases cited by respondent. In *Hon v. Director, Office of Workers' Compensation Programs*, the only case cited or found which has ad-

dressed this jurisdictional issue, the court held:

> The primary concern is that the forum be convenient and connected to the injury. In cases where the place of injury is unknown or undeterminable, this concern is best served by a fair and flexible jurisdictional rule. We hold that in such cases, appeal lies in any circuit in which the claimant worked and was exposed to the danger, prior to manifestation of the injury.

699 F.2d at 444. We agree. Because Mr. Chubb was earlier employed in coal mines in Indiana, this court has jurisdiction.

## II.

Our review of the Benefits Review Board decision is governed by the identical standards as is the Board when it reviews the ALJ's decision and order. We must therefore determine whether the ALJ's decision was supported by substantial evidence, was not irrational, and was in accord with the law. *Bishop v. Peabody Coal Co.*, 690 F.2d 131, 135 (7th Cir.1982); *Underhill v. Peabody Coal Co.*, 687 F.2d 217, 222 (7th Cir.1982); *Peabody Coal Co. v. Benefits Review Board*, 560 F.2d 797, 799 (7th Cir. 1977). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

The ALJ examined evidence pertaining to four chest x-rays of Louis Chubb in determining that Mr. Chubb was entitled to invocation of the interim presumption. The first film, taken April 10, 1974, was reviewed by three physicians. Dr. Yobbagy believed the film showed pneumoconiosis, type "s", 1/1, in all lung zones. The other two physicians, Drs. Siegelman and Cole, both "B" readers,[2] found the x-ray negative. The ALJ reasonably considered that the "B" readers' reports were entitled to greater weight than Dr. Yobbagy's. An

---

2. "B" readers are radiologists who have demonstrated their proficiency in assessing and classifying x-ray evidence of pneumoconiosis by suc-

cessful completion of an examination conducted by or on behalf of the Department of Health & Human Services.

x-ray was taken June 3, 1974 and read by Dr. Szalontay as showing no abnormalities. The third x-ray was taken in August, 1975. Dr. Stupar found evidence of a small "fibrocalcific deposit" in the base of the right lung, but no active disease. The ALJ concluded that since the term "pneumoconiosis" is defined as a dust "disease" of the lung, Dr. Stupar's finding that the x-ray showed no active disease suggested that the "fibrocalcific deposit" noted was not the equivalent of pneumoconiosis.

The fourth x-ray was the Beeler x-ray. It came into the record as follows.

After the notice of the initial finding of liability, Consolidation Coal selected Dr. Charles Test of Indianapolis to examine Chubb pursuant to 20 C.F.R. § 727.-105(b)(2).[3] Dr. Test wrote the attorney for the Company February 12, 1979 reporting on his examination January 23. This report was furnished to the Director and it was admitted into evidence without objection, apparently as part of the Director's file on the claim. The report included Chubb's history, Test's findings on examination, results of laboratory tests and electrocardiogram, description of the Beeler x-ray, and summary of pulmonary function tests done at the Indiana University Hospital.

The paragraph concerning the Beeler x-ray read as follows: "X-rays of the chest were taken in the office of Dr. John Beeler, and interpreted by him as '1/0, s, right mid and lower third, and left mid lung fields.'"

In context the natural reading is that the x-rays were taken and read by Dr. Beeler as part of Dr. Test's procedure, approximately January 23, 1979. The ALJ so concluded, and we would consider any other reading strained and unnatural. It is strange, indeed, that the Company makes any argument about the date because in its brief to the Board, it recited that the Beeler x-ray was taken "[d]uring the course of the examination."

Consolidation Coal "contends that, before invocation of the interim presumption, the x-ray reading *itself* must be in evidence as a tangible exhibit and as best evidence. Thus, the tangible exhibit would need to include a proper reading, a statement of film quality and condition, and the reading physician's signature."

■ The argument is rejected. Consolidation Coal did not object to Dr. Test's report quoting Dr. Beeler's reading of the x-ray. Indeed the Company must have supplied the report to the Director. Formal rules of evidence do not apply to administrative proceedings under the Black Lung Benefits Act, *Republic Steel Corp. v. Leonard,* 635 F.2d 206, 209 (3rd Cir.1980); *U.S. Pipe & Foundry Co. v. Webb,* 595 F.2d 264, 269 (5th Cir.1979). Even under the FEDERAL RULES OF EVIDENCE the Beeler x-ray or his report would not be required as best evidence since access to such x-ray and reading was under the control of Consolidation Coal. *See* Rule 1004(3), FEDERAL RULES OF EVIDENCE.

■ In *Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), the Supreme Court held that hearsay may constitute substantial evidence in administrative proceedings as long as factors that assure the "underlying reliability and probative value" of the evidence are present. In this case, the ALJ made the following findings regarding the underlying reliability and probative value of the evidence in question:

Dr. Beeler's interpretation arises in a context in which the statement may be deemed reliable. Dr. Test was selected by the employer to examine Mr. Chubb. His report of Dr. Beeler's reading is virtually an admission that there is positive x-ray evidence of pneumoconiosis. Dr. Test's report, including the statement by Dr. Beeler, was clearly within a subject matter area in respect to which Dr. Test was authorized, and indeed expected by the employer, to make a statement. His

---

**3.** 20 C.F.R. § 727.105(b)(2) provides that an employer notified under 20 C.F.R. § 727.105(b)(1) of potential liability shall have the right to have the claimant examined by a physician selected by such employer.

report was transmitted to the employer more than six months prior to the hearing. The employer, therefore, had ample opportunity to develop evidence contradicting Dr. Beeler's x-ray reading or Dr. Test's recitation of Dr. Beeler's findings had it elected to do so. Yet the employer raised no objection to this x-ray report, nor did it comment on it. Under these circumstances, I find that Dr. Beeler's x-ray shows the existence of pneumoconiosis.

The Test report, and its incorporation of the Beeler x-ray reading, was sufficiently probative and trustworthy to be admissible and to constitute substantial evidence. *See U.S. Pipe & Foundry Co. v. Webb,* 595 F.2d 264, 270 (5th Cir.1979).

■ The regulations require that for an x-ray to be sufficient to invoke the interim presumption, such x-ray must be of "suitable quality for proper classification of the pneumoconioses." 20 C.F.R. § 410.428(b). However, the regulations do not require notations as to the film's quality or a statement of the physician's qualifications.[4] Such an express notation of film quality is unnecessary. A physician would decline to evaluate an x-ray that he could not read properly, therefore a reading indicates a physician's determination that the film is of acceptable quality for classification purposes. *Brown v. Island Creek Coal Co.,* 4 Black Lung Rep. 1–620 (1982); *Brown v. Bethlehem Steel Corp.,* 4 Black Lung Rep. 1–527 (1981). Accordingly, the fact that Dr. Beeler read the x-ray and interpreted it as showing 1/0, "s" sufficiently establishes in the absence of contrary proof that the film was of suitable quality.

■ Consolidation Coal also argues that the ALJ "must weigh *all* of the x-rays of

record and only invoke the presumption if a preponderance of the x-rays are positive for pneumoconiosis." The Company dwells upon the fact that x-rays in 1974 and 1975 are negative and apparently argues that a reviewing court is at liberty to reject the ALJ's weighing of the x-ray evidence. We do not agree. The ALJ made it clear that if the Beeler x-ray was contemporaneous with the negative x-rays in 1974–1975 he would not have given the Beeler x-ray greater weight. He determined, however, that the Beeler x-ray was three years more recent than the others, and therefore more probative. In the light of the progressive nature of pneumoconiosis, his according greater weight to the recent x-ray was not irrational.

Dr. Beeler's reading describes a profusion of 1/0 of small irregular opacities. Under 20 C.F.R. § 410.428 an x-ray showing a profusion of at least 1/0 small irregular opacities is a positive reading and establishes the existence of pneumoconiosis.

■ Without making any explanation for differing with the Beeler reading, Dr. Test reached an opinion negative as to pneumoconiosis. He said:

It is my opinion that there is not sufficient objective medical evidence to justify a diagnosis of coalworkers' Pneumoconiosis in Mr. Chubb. I believe he suffers from mild chronic bronchitis, and there is a history of hypertension. Neither of these conditions can be attributed to pneumoconiosis.

I estimate that he has 10% permanent partial disability caused by the chronic bronchitis and hypertension. In my opinion none of his disability can be attributed to pneumoconiosis.

4. In *Brown v. Island Creek Coal Co.* the Benefits Review Board noted that:

in order for pulmonary function studies to be sufficient to invoke under Section 727.-203(a)(2), notations of quality are required.[1] Therefore, since quality notations are expressly required under subsection (a)(2), it is only reasonable to conclude that the Secretary would have expressly included a similar requirement under subsection (a)(1) if he considered such a requirement necessary.

Footnote One said:

In order to invoke the interim presumption under subsection (a)(2), tracings and notation of claimant's cooperation in performing the ventilatory studies must accompany the test results. See 20 C.F.R. § 410.430, 20 C.F.R. § 727.206(a).

4 Black Lung Rep. 1–620, 1–622—1–623 (1981).

The Company suggests Dr. Test may have read the x-ray as negative, disagreeing with Dr. Beeler, or may have considered that it showed fibrosing alveolitis or asbestosis. These suggestions are speculative. If there was a valid explanation omitted from the report by inadvertence, the Company could have produced Dr. Test, or it might have sought a new x-ray, or had the Beeler x-ray read by someone else. Under the circumstances there is no injustice in imposing the burden of explanation on the Company. We conclude that the opinions stated by Dr. Test did not deprive the ALJ's finding that pneumoconiosis existed of support by substantial evidence.

### III.

After finding Mr. Chubb entitled to invocation of the interim presumption, the ALJ then reviewed the relevant medical evidence in the record and found it insufficient to rebut the presumption of total disability due to pneumoconiosis arising out of coal mine employment under the criteria set forth in 20 C.F.R. § 727.203(b). That subsection provides that, considering all relevant medical evidence, the presumption shall be rebutted if: (1) the evidence establishes that the miner is doing his usual coal mine work or comparable and gainful work; or (2) the evidence establishes that the miner is able to do his usual coal mine work or comparable and gainful work; or (3) the evidence establishes that the total disability of the miner did not arise in whole or in part out of his coal mine employment; or (4) the evidence establishes that the miner does not have pneumoconiosis.

Rebuttal predicate (1) is clearly not available. Mr. Chubb is not working.

■ Rebuttal predicate (4) may be explored in a case where the presumption has been established on other grounds, not involving proof of the presence of pneumoconiosis. It is not available here because when the presence of pneumoconiosis has been established by an x-ray (or biopsy or autopsy), its absence has necessarily been rejected. See *Justice v. Jewel Ridge Coal*

*Corp.*, 3 Black Lung Rep. 1–547, 1–555 (1981). ("[O]nce the administrative law judge determines that the claimant has established the existence of pneumoconiosis pursuant to subsection (a)(1), a finding which must of course be based on substantial evidence, it would be contradictory for him then to find that there is substantial evidence to establish that the claimant does not, or did not, have pneumoconiosis.")

Here the ALJ examined conflicting evidence and decided that Consolidation Coal had not established rebuttal predicate (2), ability to do his coal mine or comparable work, or rebuttal predicate (3), lack of causal connection between disability and coal mine employment.

■ It is clear that Mr. Chubb is physically seriously impaired from some cause. After hearing testimony of Mr. Chubb and a co-worker who had observed him, the ALJ found that at age 54 Chubb was experiencing difficulty breathing, shortness of breath on exertion, and a cough. He retired on the advice of his physician. At the time of the hearing, at age 58, "Mr. Chubb is unable to push his lawn mower, climb stairs, or exert himself due to shortness of breath."

Analyzing the medical evidence, the ALJ looked at three ventilatory studies: April 10, 1974, indicating chronic respiratory or pulmonary disease; August 3, 1975, not complete, but a physician gave his opinion thereon that the flow rates, volumes, and capacity reflected were normal; and January 24, 1979, interpreted by Dr. Miller as "essentially within normal limits." A blood gas test on the same date, according to Dr. Miller, "gave no evidence of pulmonary limitation to exercise."

Because pneumoconiosis is a progressive disease, and in view of the lapse of time, the ALJ found Dr. Miller's evaluation persuasive. "Dr. Miller's tests alone, then, would tend to indicate the absence of total or severe disability. Yet other medical factors which Dr. Miller did not purport to address must be taken into consideration." The ALJ then observed that in 1975 "Dr.

Del Vecchio noted that blood gas and pulmonary function studies, while 'not far off normal,' failed to show the marked pathology found on physical examination."

The ALJ then considered Dr. Test's report, finding no explanation for the internal contradition between the Beeler report it quoted and the opinion expressed. "Consequently, notwithstanding the fact that Dr. Test based his opinion on various pieces of recent medical data, his report is not sufficient to establish the absence of a total disability. To the contrary, medical evaluation by Mr. Chubb's two attending physicians, relying upon factors other than pulmonary function and blood gas tests, suggest that precisely the opposite is true."

Turning to rebuttal predicate (3), the ALJ referred to Dr. Del Vecchio's observations and his opinion that Chubb has developed severe bronchitis as a result of pneumoconiosis, and to the opinion of "Dr. Reed, who, as Mr. Chubb's treating physician, found him totally and permanently disabled by several respiratory or pulmonary impairments, including emphysema and pneumoconiosis." In the light of the Beeler x-ray and the Reed and Del Vecchio opinions, the ALJ concluded that Dr. Test's opinion is an inadequate basis for concluding that Mr. Chubb's disability did not arise out of coal mine employment.

This seems a classic case of conflicts in evidence resolved by an ALJ. His findings are supported by substantial evidence viewed in the light of the whole record. We are not empowered to overturn them. *U.S. Pipe & Foundry Co. v. Webb,* 595 F.2d 264, 266 (5th Cir.1979); *Peabody Coal v. Benefits Review Board,* 560 F.2d 797, 802 (7th Cir.1977).

The petition for review is DENIED.