Arthur Wesley COOK, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 86–1775.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 24, 1986.

Decided April 13, 1987.

---

Harold B. Culley, Jr., West Frankfort, Ill., for petitioner.

Mark M. Pierce, Law Dept. Old Ben Coal Co., Lexington, Ky., Ronald G. Ray, U.S. Dept. of Justice, Office of the Sol., Washington, D.C., for respondent.

Before WOOD and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

Arthur Cook applied for disability benefits from his employer under the Black Lung Benefits Reform Act of 1977, 30 U.S.C. §§ 901 *et seq.* An administrative law judge of the Department of Labor held that Cook was not entitled to benefits and the Department's Benefits Review Board affirmed. We must consider the following question, which has divided the circuits: In deciding whether a claimant is entitled to an "interim presumption" of totally disabling black-lung disease (pneumoconiosis) due to prolonged employment in coal mining, may the administrative law judge weigh conflicting X-ray evidence of pneumoconiosis, or must he invoke the presumption if one X-ray is read once as positive for pneumoconiosis, regardless of the presence of other X-ray evidence that suggests the claimant does not have the disease? The other evidence might be negative readings of other X-rays, or a negative rereading (or rereadings) of the X-ray submitted by the claimant. Both types of evidence are involved in this case.

A regulation of the Department of Labor, the validity of which is not contested, provides (so far as relevant to this case) that "a miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... if one of the following medical requirements is met: (1) A chest roentgenogram (X-ray) ... establishes the existence of pneumoconiosis." 20 C.F.R. § 727.203(a). If this "interim presumption" of pneumoconiosis is established, the employer can rebut by showing that the claimant is not disabled, or that his disability "did not arise in whole or in part out of coal mine employment," or that "the evidence establishes that the miner does not ... have pneumoconiosis." 20 C.F.R. § 727.203(b).

The regulation is not easy to understand without understanding the structure of the black-lung compensation program, on which see *Black Lung Symposium*, 83 W.Va.L.Rev. 721 (1981). The program has two major parts, one ("Part B," see 30 U.S.C. §§ 921–925) being a program of public benefits, administered by the Department of Health and Human Services, the other ("Part C," see 30 U.S.C. §§ 931–945) a program of private benefits (i.e., paid by the miner's employer), administered by the Department of Labor. The Department of Labor's "interim presumption," quoted above, is modeled on an interim presumption applicable to the Department of Health and Human Services (and its predecessor, HEW). They are called "interim" presumptions because they are meant to speed the processing of claims till more accurate methods of diagnosing black-lung disease become available.

The main difference between the two interim presumptions is that while the HEW–HHS presumption cannot be rebutted by medical evidence as such (that is, evidence addressed to whether the miner really has black-lung disease), but only by showing that the miner's disease either is not work-related or is not disabling, there is no similar limitation in the Labor presumption. See Solomons, *A Critical Analysis of the Legislative History Sur-*

*rounding the Black Lung Interim Presumption and a Survey of Its Unresolved Issues,* 83 W.Va.L.Rev. 869, 884–902 (1981). Since this case involves the Labor presumption (because the claimant is seeking benefits from his employer), which can be rebutted by medical evidence, and since the employer put in its own X-ray evidence, it may seem to make little or even no difference whether negative X-ray evidence is admissible to prevent the interim presumption from arising or just to rebut it once it has arisen. If the presumption merely shifts the burden of production to the employer, it would indeed have no effect in a case such as the present where the employer has introduced its own X-ray evidence. If, however, the presumption affects the burden of persuasion, it could make a difference (though probably not in this case, as we shall see); for then if the presumption was established and the administrative law judge after weighing all the evidence could not decide whether the claimant had black-lung disease, the claimant would win. Attesting to the confusion endemic in many areas of American law, none of the parties to this case, including the Department of Labor, has been able to tell us what effect the presumption has. This court has held, though without extended discussion, that the presumption merely shifts the burden of production. *Underhill v. Peabody Coal Co.,* 687 F.2d 217, 222 (7th Cir.1982). If this is correct, the presumption would have no force in a case such as this, where the employer satisfied its burden of production by putting in some evidence that the claimant does not have black-lung disease. Other courts, however, have held that the presumption shifts the burden of persuasion and not just of production, see *Alabama By-Products Corp. v. Killingsworth,* 733 F.2d 1511, 1514 (11th Cir.1984); *United States Steel Corp. v. Gray,* 588 F.2d 1022, 1027–28 (5th Cir.1979), and that could change the outcome in a close case. We shall not try to determine the force of the presumption in this case.

Cook, who is now 73 years old, worked in the mines for 33 years. The record before the administrative law judge, so far as need concern us, consists of 12 readings—

all by doctors who are specialists in reading X-rays for signs of black-lung disease—of four X-rays, taken in June 1977, May 1979, August 1979, and August 1980, respectively. Only three of the 12 readings are positive—one of the readings of the May 1979 X-ray, the only reading of the August 1979 X-ray, and one of the readings of the August 1980 X-ray. The administrative law judge concluded that the X-ray evidence considered as a whole, with special emphasis on the most recent (1980) X-ray, did not support a finding of black-lung disease. He therefore denied the interim presumption and dismissed the claim for benefits. The Benefits Review Board affirmed.

Cook asks us to focus particularly on the August 1979 X-ray, the only one there is no negative reading of. Actually, the record does contain a brief notation that there was a negative reading, but the administrative law judge did not rely on it in his opinion, perhaps because of the absence of a full report from the reader. We cannot base our decision on evidence the agency rejected.

■ As is clear from the language of the regulation, a single X-ray, read by a single, qualified doctor who reports it positive for black-lung disease, establishes the interim presumption; and that would be the situation in this case if the only X-ray in the record were the one taken in August 1979 (for we cannot consider the negative reading of that X-ray). Less obvious, but to us equally clear as a matter of principle, if there are conflicting readings of the same X-ray the fact that one of them is positive does not necessarily establish the presumption even if the reader is qualified. Under the regulation it is not the reading, but the X-ray, that establishes the presumption. If one doctor interprets an X-ray as positive for black-lung disease but 100 equally qualified doctors interpret the same X-ray as negative for the disease, nothing in the regulation requires the administrative law judge to disregard the negative readings.

*Dickson v. Califano,* 590 F.2d 616, 622–23 (6th Cir.1978), is not to the contrary. It merely held that "a negative X-ray reading by a *nonexamining* physician does not constitute substantial evidence to rebut positive evidence furnished by a positive X-ray reading by a qualified examining physician." *Id.* at 623 (emphasis added). Moreover, the Sixth Circuit later retracted this holding, noting that whether a reader has examined the claimant is not important. *Lawson v. Secretary of Health & Human Services,* 688 F.2d 436, 438 (6th Cir.1982). *Lawson* does state in a dictum (see *id.* at 438–49), repeated in *Back v. Director, Office of Workers' Compensation Programs,* 796 F.2d 169, 172 (6th Cir.1986), that if the claimant submits a single positive reading of an X-ray uncontradicted by previous negative readings, the interim presumption is established and cannot be rebutted by a negative rereading of that X-ray. This dictum has two grounds, neither of which is available in the present case. First, *Lawson* like *Dickson* was decided under the HHS (then HEW) presumption, not the Labor presumption. The HHS presumption cannot be rebutted by medical evidence; so once the presumption arises, subsequent negative X-ray evidence is inadmissible. *Back* was a Labor presumption case but the court did not remark the difference between the two presumptions.

■ Second, the dictum in *Lawson* was based in part on a statute, 30 U.S.C. § 923(b), which requires the Secretary of HHS to "accept a board certified or board eligible radiologist's interpretation of a chest roentgenogram," if "there is other evidence that a miner has a pulmonary or respiratory impairment," as there was in *Dickson.* (Notice the difference in language between this statute and the regulation creating the interim presumption: "interpretation of a[n X-ray]" versus "X-ray.") Congress believed that if there was such other evidence, a negative rereading by a "panel of second-guessers" ought not defeat the miner's claim. S.Rep. No. 209, 95th Cong., 1st Sess. 11 (1977). Section 923(b) is in Part B, not Part C, under which the present case arises. It is true that section 902(f)(1) makes the "relevant provisions" of 923(b) applicable to Part C. But even assuming that a provision which requires the Secretary of HHS to accept cer-

tain evidence can be relevant to an application to the Secretary of Labor (and maybe it can be, see H.R.Conf.Rep. No. 864, 95th Cong., 2d Sess. 19–20 (1978)), U.S.Code Cong. & Admin.News 1978, pp. 237, 312, 313, it would not carry the day for Cook. Even if section 923(b) goes further than merely forbidding the Secretary to order a rereading, as distinct from the employer's rereading an X-ray submitted by the claimant, see Smith & Newman, *The Basics of Federal Black Lung Litigation*, 83 W.Va. L.Rev. 763, 768–69 (1981), no one doubts that the claimant himself can have an X-ray that was submitted by the employer reread by a physician retained by the claimant. Since in this case both the employer and Cook had the X-rays reread—indeed, two of the three positive readings were rereadings—the statute is inapplicable. The clincher is that although Cook did present some other evidence of lung disease besides X-ray evidence, he places no reliance on such evidence in this court. He treats this as a case where the only evidence is X-ray evidence. By its terms, the "rereadings" provision in section 923(b) does not apply to such a case.

■ It is true that another provision of section 923(b), one that has been held not to be limited to the Secretary of HHS, see *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 12 n. 12, 96 S.Ct. 2882, 2891, 49 L.Ed.2d 752 (1976), provides that "No claim for benefits under this part shall be denied solely on the basis of the results of a chest roentgenogram." All this means, however, is that if the claimant presents other evidence of black-lung disease, his claim cannot be denied merely because X-rays of his lungs are negative. The provision relates to the use of X-ray evidence to rebut other kinds of evidence, see 428 U.S. at 32, 96 S.Ct. at 2900 20 C.F.R. § 727.204(d), and Cook relies on no other kinds of evidence.

■ Apart from the limitations that section 923(b) places on the use of negative rereadings in some cases and negative readings in others (i.e., in cases where the claimant has other evidence of black-lung disease), and the additional limitations on that use because the HHS presumption cannot be rebutted by medical evidence that the claimant does not really have black-lung disease, the administrative law judge is entitled to weigh negative with positive readings of the same X-ray in deciding whether the claimant has established the interim presumption on the basis of an X-ray. He is entitled to do that in this case, where section 923(b) is no bar and the claimant is relying on the Labor presumption rather than the HHS presumption.

■ Equally, in a case such as this where one of several X-rays is read as positive and where, although there are no negative readings of that X-ray (as we must assume to be the case), other X-rays in the record are negative (or predominantly negative), the administrative law judge is entitled to consider the negative readings in deciding whether the claimant has established the interim presumption. It is true that in *Stapleton v. Westmoreland Coal Co.*, 785 F.2d 424, 427, 434 (4th Cir.1986) (en banc), cert. granted under the name *Mullins Coal Co. v. Director, Office of Workers' Compensation Programs*, —— U.S. ——, 107 S.Ct. 871, 93 L.Ed.2d 826 (1987), the Fourth Circuit decided that the administrative law judge must disregard the negative X-rays. The single positive X-ray establishes the presumption; negative X-rays are relevant only to support the coal operator's attempt to rebut the presumption. But in *Back v. Director, Office of Workers' Compensation Programs, supra*, 796 F.2d at 172, the Sixth Circuit rejected *Stapleton*, and—reaffirming *Lawson v. Secretary of Health & Human Services, supra*, 688 F.2d at 438–39—held that the administrative law judge can weigh the negative against the positive X-rays and form a judgment on whether the claimant is entitled to the interim presumption. In *Revak v. National Mines Corp.*, 808 F.2d 996, 1000 (3d Cir.1986), the Third Circuit followed *Stapleton*, but without citing or discussing *Back*.

This court in several cases has held or said that one positive X-ray *may* establish the presumption, even if there are negative X-rays in the record. See *Consolidation Coal Co. v. Chubb*, 741 F.2d 968, 973 (7th

Cir.1984); *Kuehner v. Ziegler Coal Co.,* 788 F.2d 439, 440 (7th Cir.1986); *Amax Coal Co. v. Director, Office of Workers' Compensation Programs,* 801 F.2d 958, 962 (7th Cir.1986) (dictum). But our fullest discussion, which is in *Chubb,* suggests that the administrative law judge is *not required* to disregard negative X-rays in cases where they are probative:

> The ALJ made it clear that if the Beeler x-ray [the positive X-ray] was contemporaneous with the negative x-rays in 1974–1975 he would not have given the Beeler x-ray greater weight. He determined, however, that the Beeler x-ray was three years more recent than the others, and therefore more probative. In the light of the progressive nature of pneumoconiosis, his according greater weight to the recent x-ray was not irrational.

741 F.2d at 973. See also *id.* at 971.

■ Cook asks us to change "may" (ignore negative X-rays in appropriate cases) to "must," and thus fall in line with the Fourth Circuit's decision in *Stapleton.* But, because close cases of interpretation of an administrative regulation must be resolved in favor of the administrator's interpretation, we disagree with *Stapleton.* (Our statement in *Kuehner, supra,* 788 F.2d at 440, that "we agree with *Stapleton* " was addressed to another aspect of that decision—its holding that all relevant medical evidence is admissible to rebut the interim presumption, regardless of the ground for the presumption. See 785 F.2d at 427.) The regulation entitles the claimant to a presumption of black-lung disease only if an X-ray "establishes" the disease, and whether it establishes it or not may depend on what other X-rays show, especially later ones; for black-lung disease is progressive. The facts of this case show the reasonableness of the Department of Labor's interpretation. The first two X-rays yielded only one positive reading out of seven. The August 1979 X-ray was read positive (by one physician) but another X-ray was taken a year later and read by four qualified physicians, only one of whom found it to be positive for black-lung disease. Cook does not argue that the nega-tive readings should be disregarded as mere "second-guessing"; and for the reasons explained earlier, we would not accept such an argument. The administrative law judge was entitled to conclude that the latest X-ray in the record should be evaluated as negative for black-lung disease. Since the disease is progressive, the fact that a later X-ray was negative suggests that if the August 1979 X-ray, like the other three X-rays in the record, had been reread, probably it too would have been found to be on balance negative rather than positive (as we know to be the case though cannot take account of in our decision because the administrative law judge did not consider the negative reading).

The essential futility of the position contended for by Cook is demonstrated by imagining that a single positive X-ray could in these circumstances establish the interim presumption. The other X-rays would be admissible to rebut the presumption, and undoubtedly would be deemed to have done so for the reasons just stated. We cannot find in the regulation any suggestion that the administrative law judge must go through a legalistic rigmarole of using one X-ray to establish the interim presumption and the rest of the X-ray evidence to rebut it, though *Stapleton* and *Kuehner* allow him to do this if he wants. It is a fluke that there is an X-ray in this record read by only one physician; and if there are divergent readings, the administrative law judge need not, at least in a case which involves the Labor presumption and to which the specific restrictions in 30 U.S.C. § 923(b) do not apply, ignore the negative readings in deciding whether an X-ray establishes an interim presumption that the claimant has black-lung disease.

The petition to set aside the order of the Benefits Review Board denying the claim for benefits is therefore

DENIED

ESCHBACH, Senior Circuit Judge, concurring in the judgment.

Although I agree with portions of the reasoning set forth in the majority opinion,

I cannot join the opinion because it sweeps more broadly than is necessary to decide the case, pays insufficient heed to the past decisions of this court, and, ultimately, is unfaithful both to the regulatory language it purports to apply and the purposes of the legislative scheme as a whole.

## I.

Initially, I must state those points on which the majority and I agree. The majority opinion states, rightly in my view, that "[u]nder the regulation it is not the reading, but the X-ray, that establishes the presumption. *Ante* at 1185. Furthermore, the majority is absolutely correct that "the administrative law judge is entitled to weigh negative with positive readings of the same x-ray" to determine whether that X-ray establishes pneumoconiosis.

However, the majority fails to recognize that this is precisely such a case. Although none of the parties attaches any significance to it (indeed none of the parties even recognized the critical distinction between an X-ray and an *interpretation* of an X-ray—a distinction upon which this case turns), the record indicates that all of the X-ray films, *including* the August 1979 film, were read as negative by at least one interpreting physician. That X-ray was read not only by Dr. Green, but also by a Radiologist named Scott, who concluded that "the heart and lungs are normal." *Director's Ex. 20.* Thus, without relying on the other X-rays in any fashion, the ALJ was entitled to conclude that the August 1979 X-ray did not show pneumoconiosis. I do not understand why the majority goes further to decide—wrongly in my view—a case which is not presented, i.e. where one X-ray is read *only* as positive, and *other* X-rays are read in a conflicting fashion by the coal company's and claimant's experts.

I disagree with the majority that the fact that the ALJ did not expressly rely on the negative reading of the August 1979 X-ray precludes us from considering it. It is true that we may not supply a different *rationale* for an administrative decision. *See Memorial Hospital of Carbondale v.*

*Heckler,* 760 F.2d 771 (7th Cir.1985). However, our task in this case is to view the record to see whether substantial *evidence* supports the administrative conclusion. That conclusion was that Cook did not satisfy the requisites for the interim presumption because he did not show that an X-ray established pneumoconiosis. We cannot assume that the ALJ rejected evidence that supported that conclusion merely because he did not expressly detail it. The majority seeks to support the conclusion on the basis of the other X-rays—of course, the ALJ did not rely on the fact that the other X-rays did not show pneumoconiosis to "infer" that the August, 1979 X-ray must not have done so. It seems infinitely more preferable to me to rest the decision on the less radical ground that ALJ weighed conflicting interpretations of the same X-ray.

On the other hand, if the ALJ did not conclude that the August 1979 X-ray failed to establish pneumoconiosis, then we must grant the petition, vacate the administrative decision, and remand. The ALJ did not expressly engage in either the evidentiary analysis suggested in the majority opinion or that which I suggest. Thus, if I accepted the wooden approach to the binding effect of the agency's "rationale" that the majority seems to embrace, I would be forced to conclude that its result is unsupportable, and in fact is inconsistent with its stated desire to avoid supplying a different rationale.

## II.

The parties and the court address the case solely in terms of whether *Stapleton v. Westmoreland Coal Co.,* 785 F.2d 424 (4th Cir.1986) (en banc), *cert. granted sub nom Mullins Coal Co. v. Director,* ——— U.S. ———, 107 S.Ct. 871, 93 L.Ed.2d 826 (1987) should be followed by this court. I believe that the prior decisions of this court have adopted *Stapleton. See, e.g., Amax Coal Co. v. Director,* 801 F.2d 958, 962 (7th Cir.1986); *Kuehner v. Ziegler Coal Co.,* 788 F.2d 439, 440 (7th Cir.1986). I realize that the language in those opinions is cast in the permissive; all the court needed to hold in those cases was that an ALJ "may"

invoke the *interim* presumption with only a single qualifying X-ray, since in those cases the ALJ in fact had done so. Of course, the cases did not—as they could not—*hold* that the presumption *must* be invoked when the conditions in the regulation are met. Nonetheless, those decisions seem to me to have clearly indicated that the *Stapleton* approach represented the law of this circuit, and today's opinion seems to be an unwarranted about face.

Even more importantly though, it seems to me that *Stapleton* was correct in terms of both the regulatory language and the purposes of the Congressional scheme it is supposed to implement. Congress enacted the Black Lung Benefits Act in 1969 as a remedial statute, designed to compensate those who had sacrificed their health through years of service in the nation's coal mines. Thus it provided, under certain circumstances, that a miner afflicted with pneumoconiosis (commonly referred to as "black lung") could recover benefits from the government, and later, from the "responsible operator" of the mine where he contracted the disease. Equally important, however, Congress recognized that black lung is a progressive disease that, all too often, eludes diagnosis. In particular, it recognized that "X-ray testing that fails to disclose pneumoconiosis cannot be depended upon as a trustworthy indicator of the absence of the disease," but positive X-rays are not untrustworthy indicators of the presence of the disease. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 32 & n. 33, 96 S.Ct. 2882, 2900 & n. 33, 49 L.Ed.2d 752 (1976).

When Congress amended and broadened the act in 1977, it authorized the Secretary of Labor to promulgate regulations no more restrictive than had previously been applied by the Social Security Administration. 30 U.S.C. § 902(f) (1982); *see also Underhill v. Peabody Coal Co.*, 687 F.2d 217, 219–20 (7th Cir.1982). The result was 20 C.F.R. § 727.203, which governs the instant case, and which provides, in pertinent part:

(a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years *will* be presumed to be totally disabled due to pneumoconiosis ... if one of the following medical requirements is met:

(1) *A* chest roentgengram (X-ray), biopsy or autopsy establishes the existence of pneumoconiosis....

20 C.F.R. § 727.203(a)(1) (1982) (emphasis added).

While the language in our previous cases involving the regulation was permissive (no more was necessary to the decisions), the regulation is cast in mandatory terms, and the use of the singular could not be plainer. The regulation defines the task for the ALJ in unambiguous terms. It does not refer to "the X-ray evidence as a whole"—the inquiry undertaken by the ALJ in this case—but rather to *an* X-ray. Thus, if the ALJ finds that *an* X-ray establishes the existence of the disease, the claimant "*will* be presumed to be totally disabled due to pneumoconiosis," i.e., the ALJ *must* invoke the presumption. Conversely, if he finds that *none* of the X-rays submitted establishes the disease, he may not (at least under (a)(1)).

The majority's opinion rests on the somewhat tenuous conclusion that, because none of the other X-rays "established" pneumoconiosis, the August, 1979 X-ray must not have done so either. The Majority holds that "Since the disease is progressive, the fact that a later X-ray was negative suggests that if the August 1979 X-ray, like the other three X-rays in the record, had been reread, probably it too would have been found to be on balance negative rather than positive." *Ante* at 1187. Such a conclusion can only be reached through sheer speculation—in which even the ALJ did not indulge. Furthermore, this rationale totally vitiates the regulatory language. If the ALJ is entitled to consider other X-rays in determining whether a particular X-ray establishes the disease, then a single positive X-ray, even if interpreted as positive by all who read it, would not necessarily trigger the presumption. As stated above, I believe that this is clearly contrary to the express wording of the regulation. While the majority is correct that the Secretary's interpretation of

his own regulations is entitled to some weight, it is not entitled to so much weight that he can, in effect, rewrite the regulation via an interpretation which conflicts with the express language of the rule.

I also believe that allowing a positive X-ray to be defeated by negative readings of other X-rays is inconsistent with the Congressional intent underlying the statutory scheme. When Congress amended the Act in 1972, it added 30 U.S.C. § 923(b), which, in addition to the "no re-readings" provision to which the majority adverts, provides, "no claim for benefits under this part shall be denied solely on the basis of the results of a chest roentgenogram." Despite the majority's protestations, this provision is not limited by the language calling for "other evidence that the miner has a pulmonary or respiratory impairment." The text of section 923(b) reads, in pertinent part:

> In carrying out the provisions of this part, the Secretary shall to the maximum extent feasible (and consistent with the provisions of this part) utilize the personnel and procedures he uses in determining entitlement to disability insurance benefits payments under section 223 of the Social Security Act, *but no claim for benefits under this part shall be denied solely on the basis of the results of a chest roentgenogram....* In any case, other than that involving a claim filed on or after the effective date of the Black Lung Benefits Amendments of 1981, in which there is other evidence that a miner has a pulmonary or respiratory impairment, the Secretary shall accept a board certified or board eligible radiologist's

interpretation of a chest roentgenogram which is of a quality sufficient to demonstrate the presence of pneumoconiosis....

(emphasis added).

The structure of the section indicates that the prohibition on sole reliance upon negative X-ray evidence to deny a claim is not limited by the "other evidence" language. Nor is there any suggestion in *Turner-Elkhorn Mining* that such a limitation applies.[1] To the contrary, the Court states, in straightforward fashion, "The prohibition is only against sole reliance upon negative X-ray evidence in rejecting a claim." 428 U.S. at 33, 96 S.Ct. at 2900. Nothing in the Court's opinion suggests that this prohibition is inapplicable where the evidence supporting the claim is also X-ray evidence.

Thus, under the provision, a chest X-ray can serve as the sole support for a claim for benefits, but cannot serve as the sole rebuttal. While at first blush this may seem somewhat unfair or irrational, it is neither, for it is perfectly consistent with the failings which Congress rightly perceived in X-ray evidence. The majority, by allowing the ALJ to refuse invocation on the ground that a majority of the X-ray readers did not find pneumoconiosis effectively circumvents the Congressional intent.

My main concern with the majority's approach is that, by allowing the ALJ to weigh all the X-ray evidence to decide whether to invoke the interim presumption in the first place, it deprives the presumption of its presumptive effect.[2] As I have already stated, I agree that the ALJ must

---

1. Indeed, the only "other evidence" even remotely referred to at the page of *Turner-Elkhorn Mining* the majority cites as support for this proposition is autopsy evidence, and that is referred to only by way of illustrating the unreliability of negative X-rays. The relevance of 20 C.F.R. § 727.204, which sets forth a presumption (and places limits on permissible rebuttal) regarding miners who died on or before March 1, 1978, also cited by the majority as support, is not readily apparent.

2. The majority is properly cautious in eschewing any determination of the role of the presumption in this case (i.e. whether it shifts the

burden of proof or merely production). While it is correct that a panel of this court has held that the presumption merely shifts the burden of production, *Underhill v. Peabody Coal Co.,* 687 F.2d 217, 222 (7th Cir.1982), the authority of that case may be questionable in light of *Amax Coal Co. v. Director,* 772 F.2d 304, 305–06 (7th Cir.1985) which, while it interpreted a different presumption (that found in 30 U.S.C. § 921(c)(5)), specifically relied on cases holding that the interim presumption in § 727.203 shifts the burden of proof, including *Alabama By-Products v. Killingsworth,* 733 F.2d 1511, 1513–14 (11th Cir.1984).

make certain findings of fact before he invokes the presumption, including whether an X-ray establishes pneumoconiosis. However, I believe the majority's opinion goes beyond this and requires the claimant to prove his case at the invocation stage. The majority seems to overlook that this case was decided at the invocation stage and characterizes the issue as whether the ALJ "must ignore negative X-rays." *Ante* at 1185, 1187. The simple answer is that he need not do so in *finally* deciding the case unless there is no other rebuttal evidence, a situation not present here. However, at the invocation stage, he must invoke the presumption if the conditions of the regulation (including a single positive X-ray) are met.