877 F.2d 60
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Paul SHIRKS, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 88-3808.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1989.
Decided June 13, 1989.
 
 Paul Graham Beers (Client Centered Legal Services of Southwest Virginia, Inc. on brief) for petitioner.
 Melissa Reardon Henry (George R. Salem, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Michael J. Denney, Counsel for Appellate Litigation, Barbara E. Walsh, U.S. Department of Labor, Office of Solicitor on brief) for respondent.
 Before MURNAGHAN, Circuit Judge, ROBERT J. STAKER, United States District Judge for the Southern District of West Virginia, and JOSEPH C. HOWARD, United States District Judge for the District of Maryland, both sitting by designation.
 PER CURIAM:
 
 
 1
 Paul Shirks appeals an order of the Benefits Review Board affirming the decision of an Administrative Law Judge (ALJ), which was entered by the ALJ after he had conducted, at Shirks' request, a hearing upon Shirks' application, filed October 27, 1977, for benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. Finding that decision to be supported by substantial evidence, we affirm.
 
 
 2
 Shirks' application, filed on October 27, 1977, is governed by the provisions of 20 C.F.R. Sec. 727.203(a) (hereinafter, Section 203(a)).[1] Both parties so agree.
 
 
 3
 The ALJ's decision concluded that Shirks had engaged in coal mine employment for slightly longer than 10 years and thus had satisfied the minimum period of such employment required by the provisions of Section 203(a).[2]
 
 
 4
 The sole error assigned by Shirks in his appeal here was the Board's affirming the ALJ's decision that the medical evidence failed to establish that Shirks was totally disabled, pursuant to the provisions of Section 203(a)(4), and this court must decide whether the Board erred as Shirks asserts.
 
 
 5
 In order to invoke the presumption provided in Section 203(a)(4), Shirks had the burden of establishing by a preponderance of the evidence the qualifying facts required thereby. Mullins Coal Co. v. Director, OWCP, 484 U.S. ----, 98 L.Ed.2d 450, 108 S.Ct. ---- (1987). And it was the ALJ's task "to weigh the quality, and not just the quantity, of the evidence before determining whether the presumption has been invoked." Id., 98 L.Ed.2d at 463, n. 23.
 
 
 6
 The issue on appeal here is whether the decision of the Board, affirming the ALJ's decision, is supported by substantial evidence as a whole, as required by 33 U.S.C. Sec. 921(b)(3). Phillips v. Director, OWCP, 768 F.2d 982, 983 (8th Cir.1985). In deciding that issue, the court of appeals scrutinizes the Board's decision "for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." Director v. Rowe, 710 F.2d 251, 254 (6th Cir.1983); Bumble Bee Sea Foods v. Director, OWCP, 629 F.2d 1327, 1329 (9th Cir.1980).
 
 
 7
 In his decision, the ALJ considered and discussed at some length all of the medical evidence, generated by some sixteen physicians.[3]
 
 
 8
 In the part of his decision in which he dealt with the medical evidence directly bearing upon the issue of whether Shirks had met the medical requirements provided in Section 203(a)(4) and concluded that he had not done so, the ALJ considered, discussed and weighed the medical evidence generated by Drs. Fleenor, Bushy, Gabriel, Taylor, Miller, Brock, Smiddy and Paranthaman, which was in substance as follows:
 
 
 9
 Dr. Fleenor: Reported on January 17, 1975, that Shirks suffered from borderline disability from chronic obstructive lung disease, possibly related to histoplasmosis, Shirks' slight cigarette habit and idiopathic causes, and that Shirks did not have black lung disease but had scarring on the lungs from an old histoplasmosis infection.
 
 
 10
 Dr. Bushy: Reported on January 14, 1976, that Shirks had chronic lung disease with pulmonary emphysema and fibrosis, compatible with coal worker's pneumoconiosis 2/1 t, c n.[4]
 
 
 11
 Dr. Gabriel: On January 13, 1977, reported Shirks had chronic obstructive pulmonary disease secondary to pulmonary emphysema and fibrosis due to coal mine employment, noted a traumatic arthritic condition of the right ankle, found Shirks disabled for gainful employment and opined that the disability might be permanent.[5]
 
 
 12
 Dr. Taylor: On March 31, 1989, noted chronic bronchitis with fibrosis and mild emphysema, the etiology of which he was unable to determine, but that he would consider the possibility that Shirks' coal mine employment history of 18 years implies pneumoconiosis.
 
 
 13
 Dr. Miller: Reported in a hospital discharge summary for the period August 31 to September 4, 1980, that Shirks had an inactive peptic ulcer and esophagitis. Dr. Brock: Stated in that same hospital discharge summary that Shirks had pneumoconiosis evidenced in borderline obstructive defect with no restrictive defect.[6]
 
 
 14
 Dr. Smiddy: On October 27 and December 10, 1981, reported that Shirks had coal worker's pneumoconiosis of sufficient degree to preclude activities necessary for coal mine employment; noted a history of shortness of breath and an October 1981 hospital admission for evaluation of cough productive of bloody sputum and yellowish sputum with black particles; noted severe chest injury from a 1959 mining accident and other mining accidents including arm and right wrist injuries in 1962, and a broken leg in 1973, that Shirks had been hospitalized at least 3 times for bleeding ulcers and that he had a history of pneumonia, pleurisy and asthma. Based upon X-ray evidence showing stable calcium in lung fields and 1/0 p t (Dr. Rucker's X-ray of October 23, 1981), a pulmonary function test showing mild obstructive but no restrictive defect and physical examination, including a December 1981 hospitalization for evaluation of chronic obstructive pulmonary disease, Dr. Smiddy diagnosed Shirks as suffering from coal worker's pneumoconiosis. He stated, however, that "At the conclusion of this workup the patient actually had less of a severe problem than I had anticipated."[7]
 
 
 15
 Dr. Paranthaman: On April 26, 1978, noted mild to moderate impairment due to asthmatic bronchitis which had its inception when Shirks was a child. On August 28, 1984, Dr. Paranthaman reported on the results of an August 8, examination he conducted at the request of the Director, and found a pulmonary function test, a blood gas test and an electro-cardiogram all to be within normal limits, and an X-ray to show no evidence of coal worker's pneumoconiosis. He further reported that Shirks gave a history of smoking 1/2 pack of cigarettes daily for 15 years, ending in 1982; that Shirks complained of shortness of breath for the past 6 years and orthopedic problems; that Shirks could walk 3/4 mile on level ground, climb one flight of steps, lift 50 pounds and carry 25 pounds for one block. Dr. Paranthaman noted persistent cough with one cup of sputum produced daily, and a 5 year history of wheezing, aggravated by exercise or fog, but relieved by medication. A dull aching chest pain for 5 years was noted, consistent with angina pectoris of which there was a four year history. Shirks displayed no clubbing, cyanosis, jaundice or pallor; he was not dyspnic at rest, and had no edema of the extremities. A history of depression, bleeding peptic ulcer and chronic low back pain, arthralogia of the knee and right ankle was noted. Dr. Paranthaman concluded that Shirks suffered chronic bronchitis and R/O angina pectoris, but did not have coal worker's pneumoconiosis. The lung problems were found due to chronic bronchitis related possibly to smoking and/or dust exposure. Shirks was found not disabled as a coal miner by his lung problems. Rather, his ability to do manual work was found impaired significantly by chronic lower back pain, depression and chest pain probably due to angina.
 
 
 16
 Scrutiny of the medical evidence bearing upon any disability, or the degree thereof, from which Shirks suffered any respiratory or pulmonary impairment reveals the following:
 
 
 17
 Dr. Fleenor characterized Shirks' disability as "borderline disability from obstructive lung disease," and Dr. Brock stated it to be "borderline obstructive defect with no restrictive defect." While each of those doctors found that Shirks suffered from what amounts to "respiratory or pulmonary impairment," that language used by them in their assignment of the degree of Shirks' disability therefrom cannot be said to describe the impairments reported by them to be "totally disabling" ones, which the provisions of Section 203(a)(4) require to be established before the presumption therein provided is invoked. Moreover, Dr. Brock's report did not constitute "medical evidence, including the documented opinion of a physician exercising reasoned medical judgment," is as required thereby, since it was neither documented nor reasoned. At most, it constituted a bald statement. See Director v. Rowe, 710 F.2d 251, 255 (6th Cir.1983) (even that an opinion is assertedly based upon medical studies does not establish that it is documented and reasoned; that determination requires the factfinder to examine the validity of the reasoning in light of the studies and objective indications forming the basis of the opinion); Phillips v. Director, OWCP, 768 F.2d 982, 985 (8th Cir.1985).
 
 
 18
 Accordingly, the medical evidence generated by neither Dr. Fleenor nor Dr. Brock can be said to have established the presumption provided in Section 203(a)(4). Such would be true if no other medical evidence dealing with Shirks' disability was presented.
 
 
 19
 Dr. Gabriel's opinion that Shirks had chronic obstructive pulmonary disease secondary to pulmonary emphysema and fibrosis due to coal mine employment, as well as a traumatic arthritic condition of the right ankle, and was disabled for gainful employment and that the disability might be permanent, was likewise not supported by reasoned medical judgment or documentation. He performed no ventilatory or blood studies and did not appear to have relied upon any X-ray evidence, nor did he appear to set forth other data upon which he based his opinion, wherefore his opinion did not constitute such evidence as Section 203(a)(4) requires to establish the presumption therein. The ALJ understandably accorded that opinion little if any probative value.[8]
 
 
 20
 This brings us to a scrutiny of the medical evidence generated by Dr. Smiddy vis-a-vis that generated by Dr. Paranthaman contrary thereto:
 
 
 21
 Dr. Smiddy stated in late 1981, that, based upon X-ray and other evidence, Shirks had "coal worker's pneumoconiosis of sufficient degree to preclude activities necessary for coal mine employment," which was tantamount to having stated that Shirks was totally disabled from pneumoconiosis.
 
 
 22
 Contrarily, Dr. Paranthaman noted in April, 1976, that Shirks suffered mild to moderate impairment due to asthmatic bronchitis which had its inception when Shirks was a child, and in August, 1984, following a thorough examination and "workup" of Shirks, stated that Shirks was "not disabled as a coal miner by his lung problems," but his ability to do manual work was significantly impaired by physical conditions totally unrelated to respiratory or pulmonary ones. Dr. Paranthaman's two reports were not inconsistent, and the August, 1984 one was particularly well reasoned and documented.
 
 
 23
 In Mullins, 98 L.Ed.2d at 465, the court said:
 
 
 24
 Furthermore, in weighing conflicting X-ray readings ALJ's will undoubtedly keep in mind the character of the black lung disease:
 
 
 25
 "Since pneumoconiosis is a progressive and irreversible disease, early negative X-ray readings are not inconsistent with significantly later positive readings.... This proposition is not applicable where the factual pattern is reversed. In a situation ... where the more recent X-ray evidence is negative and directly conflicting with earlier positive X-rays it may be weighed with less regard to timing in light of the recognized principle that negative X-ray readings are not a trustworthy indicator of the absence of the disease." Elkins v. Beth-Elkhorn Corp. 2 BLR 1-683, 1-686 (Ben Rev Bd 1979).
 
 
 26
 The Mullins Court indicated that, because of the progressive nature of pneumoconiosis, more recent negative X-rays may be weighed with less regard to timing than earlier positive ones, but did not disapprove the Board's practice of giving greater weight to the more recent ones.[9] See Mullins, 98 L.Ed.2d at 470, n. 34, wherein the Court cited Consolidation Coal Co. v. Chubb, 741 F.2d 968, 973 (7th Cir.1984) (approving ALJ's "according greater weight to the recent x-ray") and Markus v. Old Ben Coal Co., 712 F.2d 322, 324 (7th Cir.1983) (approving ALJ's accepting more recent negative x-ray interpretations over older positive ones).
 
 
 27
 Thus, the ALJ did not act improperly by according to Dr. Paranthaman's 1984 medical evidence greater weight than he accorded to Dr. Smiddy's 1981 medical evidence.
 
 
 28
 Moreover, Dr. Smiddy's reports of October 27 and December 10, 1981, diagnosing Shirks as having pneumoconiosis was apparently chiefly based upon X-ray evidence. In evaluating the X-ray evidence for the purpose of ruling upon whether Shirks had established the presumption in Section 203(a)(1), the ALJ found the X-ray evidence to be inconsistent, pointing out that "Dr. Navani, the only B reader,[10] found conditions consistent with pneumoconiosis in 1980, but found no evidence of the condition in 1984," and held that Shirks had failed to establish the Section 203(a)(1) presumption. That finding of Dr. Navani would tend to refute Dr. Smiddy's finding of pneumoconiosis based upon X-ray evidence in 1981, and corroborate Dr. Paranthaman's finding that Shirks did not have pneumoconiosis in 1984. The ALJ was not required so restrictively to consider the evidence bearing upon the Section 203(a)(4) presumption that he was obliged to ignore his conclusion, based upon the X-ray evidence, that Shirks did not have pneumoconiosis and had failed to establish the Section 203(a)(1) presumption, pneumoconiosis being the respiratory or pulmonary impairment to which Dr. Smiddy ascribed Shirks' total disability. Rather, the ALJ properly could consider that conclusion in weighing Dr. Smiddy's 1981 medical report that Shirks had "coal worker's pneumoconiosis of sufficient degree to preclude activities necessary for coal mine employment" in arriving at his conclusion as to the Section 203(a)(4) presumption. The Court in Mullins 98 L.Ed.2d at 464, said that all relevant medical evidence must be considered.[11]
 
 
 29
 The ALJ properly found from a preponderance of the evidence that Shirks had not established the Section 203(a)(4) presumption, and the Board did not err by affirming that finding.
 
 
 30
 Accordingly, we conclude that the decision of the Benefits Review Board was supported by substantial evidence and therefore affirm.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 20 C.F.R. Sec. 727.203(a)(1), (2) and (3) provide in substance, and (4) provides as quoted below, that a miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis arising out of that employment if any of the four following medical requirements therein respectively provided is met:
 (1) a chest X-ray or biopsy established the existence of pneumoconiosis;
 (2) ventilatory studies of certain prescribed values establish the presence of a chronic respiratory or pulmonary disease;
 (3) blood gas studies of certain prescribed values demonstrate an impairment of the transfer of oxygen from the lung alveoli to the blood;
 (4) "[o]ther medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment."
 
 
 [2]
 The ALJ's decision further concluded that the evidence failed to establish that Shirks had met any of the three medical requirements respectively provided in Section 203(a)(1), (2) or (3). None of those conclusions are assigned as error by Shirks in his appeal here
 
 
 [3]
 In concluding that Shirks had failed to meet the medical requirements provided in 203(a)(1), the ALJ considered X-ray evidence generated by Drs. Lasky, Halpen, Fink, Fleenor, Navani, Bushy, Rucker and Shirks (sic); in concluding that Shirks had failed to meet those provided in Section 203(a)(2), he mentioned only Dr. Paranthaman but pointed out that none of the five ventilatory studies in evidence were qualifying ones; and in concluding that Shirks had failed to meet those provided in Section (a)(3), he considered blood gas studies generated by Drs. Taylor, Fleenor and Paranthaman
 
 
 [4]
 In his decision, the ALJ stated, pertaining to this medical evidence of Dr. Bushy, "This diagnosis was based upon an x-ray reading which has been rejected as not being probative." Earlier in his decision, the ALJ had pointed out that "The reading of the most serious condition [i.e., the reading of that X-ray involved], that of Dr. Bushy, cannot be given weight because it is completely at odds with all subsequent readings." Shirk's counsel asserts that it was not "completely at odds" with subsequent readings because, as the ALJ remarked in deciding the issues under Section 203(a)(1), "[a]n October 23, 1981 x-ray was interpreted by Dr. Rucker as 1/0 p," and thereafter remarked that "Dr. Rucker, in 1981, found some evidence which would qualify to invoke the presumption [in Section 203(a)(1) ]."
 
 
 [5]
 The ALJ pointed out, "The basis of Dr. Gabriel's opinion is not apparent. He performed no ventilatory or blood gas tests and does not appear to rely upon any x-ray evidence."
 
 
 [6]
 The ALJ pointed out regarding this statement by Dr. Brock, "The basis for the latter diagnosis [of Dr. Brock] is not given"
 
 
 [7]
 The ALJ noted that the significance of that last, quoted observation is not further explained
 
 
 [8]
 Shirks asserts that when Dr. Gabriel rendered his report, he was Shirks' treating physician, wherefore his report is entitled to weight, citing Hamrich v. Schweicker, 679 F.2d 1078, 1082 (4th Cir.1982). The Board contends that there is nothing in Dr. Gabriel's report to substantiate that assertion. Even if that assertion is accepted as true, Dr. Gabriel's report remains unreasoned and undocumented and thus outside the requirements of Section 203(a)(4)
 
 
 [9]
 In a Supplementary Brief filed by Shirks on March 21, 1989, after the court had heard arguments herein on March 6, Shirks concedes that "The Mullins Court also endorsed the ... [Board's] practice of giving the most weight to the most recent x-ray evidence because of the progressive nature of pneumoconiosis," but argues that since Shirks need only establish "the presence of a totally disabling respiratory or pulmonary impairment" to invoke the presumption provided in Section 203(a)(4), and need not prove that he suffered from pneumoconiosis to do so, whether a miner suffers from pneumoconiosis is only relevant when making a finding under Section 203(a)(1). For the reasons set forth herein, that argument is not well taken
 
 
 [10]
 A physician who is a B reader of X-rays is generally regarded to be more expert in reading them than one who is not a B reader
 
 
 [11]
 The ALJ's decision was issued March 7, 1986, well before Mullins was decided on December 14, 1987. The Board affirmed the ALJ's decision in a decision issued on December 31, 1987